[Civil No. 4339. Filed May 20, 1941.]

[113 Pac. (2d) 645.]

D. C. O'NEIL, THAD M. MOORE and C. WARREN PETERSON, as Members of the ARIZONA STATE TAX COMMISSION, Appellants, v. UNITED PRODUCERS and CONSUMERS CO-OPERATIVE, Appellee.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Special Assistant Attorney General, for Appellants.

Messrs. Langmade and Langmade and Mr. Fred J. Elliott, for Appellee.

Messrs. Baker & Whitney, Mr. Lawrence L. Howe, and Mr. Harold E. Whitney, of Counsel for Appellee.

Messrs. Cunningham and Carson, *Amici Curiae.*

McALISTER, J.—A question having arisen as to whether the United Producers and Consumers Co-operative, a corporation, was liable for the payment of the sales tax of 2% on sales made by it from and after January 31, 1938, that corporation brought an action against D. C. O'Neil, Thad M. Moore and C. Warren Peterson, members of the state tax commission of Arizona, under the declaratory judgments act, sections 27–701 to 27–706, Arizona Code of 1939, to have its rights and those of the tax commission relative to the payment of this tax ascertained and declared by a judgment of the court.

The agreed statement of facts upon which the matter was heard in the trial court discloses that the United Producers and Consumers Co-operative, hereinafter referred to as the Co-op, is a nonprofit corporation organized in June, 1934, by five persons engaged in agricultural pursuits, under article 7, chapter 49, Arizona Code of 1939, entitled "Co-operative Marketing Act." It has no capital stock but section 49–710,

Arizona Code of 1939, a part of that act, provides that "when a member of an association established without capital stock, has paid his membership fee, he may receive a certificate of membership," and the by-laws of the organization fixes this fee at fifty cents, which the record discloses had been paid by 11,700 persons up to the day of the trial.

The principal purpose of the organization was to purchase supplies and equipment for the use of its members and other persons and turn these articles over to them at cost plus necessary expenses of handling, and also to market the agricultural products of its members or other producers and turn back to them the proceeds of sales, less the necessary expenses. Other powers were conferred by its articles but it is unnecessary to mention them here.

The Co-op conducts its business at 1821 east Jackson street, Phoenix, in three buildings which it leases for $100 a month from C. M. Martin, and, according to the record, it purchased from Martin goods, wares and merchandise amounting to more than one million dollars in value from May 1, 1935, to July 31, 1937, and from November 1, 1938, to January 31, 1939, and sold practically all of these goods at retail to its members, only a small amount going to nonmembers or to wholesalers. It further appears that the Co-op paid voluntarily the retail tax of 2% on the sales to its members from May 1, 1935, to January 31, 1938, and on sales to nonmembers through May 31, 1938. It ceased to pay this tax after January 31, 1938, because the director of the sales tax division of the tax commission wrote its secretary-treasurer, W. G. Ashby, under date of March 12, 1938, that the income from its sales of merchandise to its members was exempt from the provisions of the Excise Revenue Act of 1935, as amended, Code 1939, § 73–1301 et seq., though he demanded that it continue paying the tax on sales to its

nonmembers and it did so until the last of May of that year. The action of the director was taken pursuant to a letter from the attorney general to him, dated February 18, 1938, advising him that the Co-op was not liable for the tax on such sales under the Co-operative Marketing Act.

It appears further that the Co-op does business without profit; has created no surplus or reserve fund, and since February 1, 1938, has made no provision for collection of the tax on its sales of supplies, merchandise or equipment to its members.

The controversy that the Co-op and the tax commission agree exists between them is whether the former is liable for the payment of a privilege sales tax on supplies, machinery and equipment sold by it to its members from and after February 1, 1938, the Co-op claiming that it is not by virtue of the Co-operative Marketing Act under which it was incorporated and does business, while the defendant takes the position that it is.

■ We have just held in *State Tax Commission* v. *Martin, ante,* p. 283, 113 Pac. (2d) 640, that all the goods, wares and merchandise sold by the Co-op from May 1, 1935, to July 31, 1937, and from November 1, 1938, to January 31, 1939, were the property of C. M. Martin; that title to them passed directly from him, through the agency of the Co-op to the ultimate consumer, there being no period of time in which it rested in the Co-op; that this being true, C. M. Martin was liable for the tax thereon, since one whose property is sold through an agent is liable for the sales tax to the same extent he would be if he sold it himself. The Co-op was not, therefore, liable for the tax on sales made after November 1, 1938, inasmuch as it and Martin returned on that date to the method of doing business they had followed prior to August 1, 1937,

that is, Martin owned the merchandise and the Co-op sold it as his agent.

However, during the fifteen months between August 1, 1937, and November 1, 1938, the evidence discloses that the Co-op owned the merchandise it sold, its daily indebtedness to Martin therefor during this period averaging between $75,000 and $80,000. The goods were still the property of the Co-op on February 1, 1938, when it ceased to pay the tax on sales to its members and also on May 31, 1938, when it stopped paying on sales to nonmembers, and so remained until November 1, 1938, when by agreement between it and Martin they were returned to the latter and the method of doing business they had followed prior to August 1, 1937, was resumed. The question presents itself, therefore, whether the Co-op was liable for the tax on sales to its members during the nine months (February 1 to November 1, 1938) in which it was still the owner of the goods. The parties in their briefs seem to have proceeded upon the theory that payment should have been made by it unless that part of the Co-operative Marketing Act reading as follows, which is section 49–720, Arizona Code of 1939, relieved it from doing so:

"*Fees.*—Each association organized hereunder shall pay an annual license fee of ten dollars ($10.00), but shall be exempt from all franchise or license taxes. For filing articles of incorporation, each association shall pay ten dollars ($10.00); and for filing an amendment to the articles, two dollars and fifty cents ($2.50)."

Appellee contends that because the exemption was given it by this section, the tax commission could not impose any further license upon it, while appellants take the position that the exemption was repealed by the Excise Revenue Act which was enacted some fifteen years later than the Co-operative Marketing Act.

The particular provision of the Excise Revenue Act it is claimed has this effect is section 73–1321, Arizona Code of 1939, which reads as follows:

"*Additional tax.*—The tax imposed by this article shall be in addition to all other licenses and taxes levied by law, whether as a condition precedent to engaging in any business taxable hereunder or for any other purpose."

The Excise Revenue Act does not repeal specifically any provision of the statute but the contention is that there is a conflict between this section and 49–720, *supra,* and that in so far as this is true the later act repeals the older one by implication. It is unnecessary to discuss this question because, as we view it, the sales tax is not a license tax within the meaning of this term, as used in the expression "exempt from all franchise or license taxes." It is an excise tax imposed by the legislature in the exercise of its taxing power for the purpose of raising revenue and in no sense of the term for regulation. The power to provide for such a tax does not rest or originate in the police power of the state which enables it to regulate business in the interest of public peace, health and safety. That the sales tax is not a license tax is pointed out in *Shanks* v. *Kentucky Independent Oil Co.,* 225 Ky. 303, 8 S. W. (2d) 383, 385, where the court, in distinguishing between an excise tax in its original limited sense and a license tax, said that "the tax levied by this act is an excise" and approved the statement in 26 R. C. L. 34 that "excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of the government." It then followed with this language:

"A license tax or tax for the privilege of doing business is sometimes referred to as an excise, as are all forms of taxation which are not burdens laid di-

rectly upon persons or property. The three-cent tax on gasoline imposed by the 1924 act, however, is an excise in the original and limited sense, being 'something cut off from the price paid on a sale of goods, as a contribution to the support of the government.' A careful reading of the act convinces us that the tax imposed was not intended as a license tax or a tax for the privilege of engaging in the business of selling gasoline in this state. . . . ''

██ After quoting the foregoing language in *Independent School Dist., etc.,* v. *Pfost, etc.,* 51 Idaho 240, 4 Pac. (2d) 893, 897, 84 A. L. R. 820, the supreme court of Idaho, in disposing of the contention that the gasoline tax of five cents a gallon in that state was not a license tax and could not be imposed on a municipal corporation, said:

"In Idaho the Legislature was confronted with this condition. It found a demand for better roads incident to the use of rapid motor-driven vehicles. It found an extensive use of gasoline on its highways in this traffic. Without affecting the legality of that use, it imposed a tax upon the use, and adopted a method of collecting the tax without exacting any license or permit. The tax having no relation to any license granted or required, it is in no sense a license tax limited by the Constitution to persons and corporations doing business in the state.''

In 37 C. J. 170, par. 6, is found this language:

'' . . . where the fee is exacted solely or primarily for revenue purposes and payment of the fee gives the right to carry on the business or occupation without the performance of any further conditions, it is not a license fee but a tax imposed under the power of taxation, regardless of the name by which it may be called.''

 While section 73–1312, Arizona Code of 1939, does provide that ''every person having a gross proceeds of sales or gross income upon which a privilege tax is imposed by this article, desiring to engage or

continue in business, shall make application to the commission for a privilege license, accompanied by a fee of one dollar ($1.00), and no such person shall engage or continue in business until he shall have obtained such license," and that any person who violates this section shall be guilty of a misdemeanor and upon conviction fined not less than ten dollars or imprisoned for not less than ten days, yet that one dollar fee is not a license tax within the meaning of that term as used in 49–720, *supra*. It will be observed that it is paid only once, that it is fixed and unvarying, that all persons who pay it are entitled to receive a license and for whatever location may be applied for, and that the tax commission has no control over the business of the licensee after it is paid. In view of these facts it has been held twice by this court that the one dollar is nothing more than a registration tax required in order that the tax commission "may know who are in business and should pay the tax." *City of Phoenix* v. *State,* 53 Ariz. 28, 85 Pac. (2d) 56, 58; *Giragi* v. *Moore,* 49 Ariz. 74, 64 Pac. (2d) 819, 110 A. L. R. 320. And the fact that it makes the failure to pay the license fee a misdemeanor does not affect its character as a tax. *Giragi* v. *Moore, supra; State* v. *Murphy,* 90 Conn. 662, 98 Atl. 343. "That is only a convenient means provided to hasten the collection of the tax." *Smith* v. *Mahoney,* 22 Ariz. 342, 197 Pac. 704, 707.

██ It is suggested by appellee that section 73–1302, Arizona Code of 1939, which defines business within the meaning of the Excise Revenue Act, excludes or exempts from the payment of the sales tax those businesses that are not carried on for the purpose of gain or advantage. The portion of the section referred to reads: " 'Business' includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but not casual ac-

tivities or sales.'' It could hardly be seriously contended that those who organized the United Producers and Consumers Co-operative or those who later became members of it by the payment of the required fee, in order that they might purchase goods, wares and merchandise at cost, had no idea of gain, benefit or advantage to themselves. And any activity carried on by the corporation which benefits its organizers or members constitutes business within the meaning of this provision.

It follows that the Co-op was liable for the tax on sales to its members from and after February 1, 1938, as well as on those to nonmembers from June 1, 1938, until November 1 of the same year, when the goods were returned to C. M. Martin and the tax on their sales became his obligation as their owner.

The judgment is reversed.

LOCKWOOD, C. J., and ROSS, J., concur.