**HELVERING, Com'r of Internal Revenue,
v. JEWEL MINING CO.**

No. 12122.

Circuit Court of Appeals, Eighth Circuit.

April 7, 1942.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

H. M. Noble, of Kansas City, Mo. (R. S. Eastin and McCune, Caldwell, Downing & Noble, all of Kansas City, Mo., on the brief), for respondent.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

In this case the Commissioner of Internal Revenue seeks review of a decision of the United States Board of Tax Appeals (43 B. T.A. 1123) redetermining the income taxes of the respondent for the fiscal year ended March 31, 1936.

The case involves the right of the owner of a leasehold interest in a tract of coal land to aggregate the income from its own operations on a part of the land with the income received from a sublessee for operations on another part of the land for percentage depletion purposes under § 114(b)(4) of the Revenue Act of 1934, 26 U.S.C.

A. Int.Rev.Acts, page 701, and article 23 (m)–1(b) and (j) of Regulations 86 promulgated thereunder. The pertinent parts of the statute and of the regulations are copied in the footnote.[1]

The facts were stipulated. The respondent, Jewel Mining Company, was, during the fiscal year, a Delaware corporation. On July 1, 1930, it acquired a leasehold interest in a mineral property comprising 800 acres, more or less, of coal land in the state of Arkansas. It continued to hold the leasehold interest during the year. Prior to and during the year respondent operated a mine on a portion of the acreage. From these operations it reported a net income from the sale of coal in the amount of $732.36. Its gross income for the same period, exclusive of royalties to its lessor, was in the sum of $201,469.40.

Prior to the beginning of the fiscal year respondent subleased another part of the acreage to Blue Ribbon Mining Company, a corporation, and on account of coal mining operations on the portion subleased the Blue Ribbon Mining Company paid respondent gross royalties in the sum of $4,889.26, of which sum respondent paid to its lessor $2,194.41, leaving a net income to the respondent for the operations of the sublessee (without allowing depletion) of $2,694.85.

In its income tax return for the taxable year the respondent claimed a percentage depletion in the amount of $2,191.56 computed on the basis of the combined net income from its own operations and the royalties received from the sublessee. The Commissioner in calculating a deficiency computed percentage depletion separately on the income from respondent's own operations, limiting it to 50% of the net income from that source, or $366.18, and on the royalties received from the sublessee in the sum of $134.74, making a total depletion allowance of $500.92. The difference in the two methods of figuring results in an allowable deduction for depletion of $1,690.64 ($2,191.56 less $500.92) less than claimed by respondent.

The controversy turns on the proper construction to be placed upon § 114(b) (4) of the Revenue Act of 1934 and article 23 (m)–1(b) and (j) of Regulations 86, supra. The respondent contends (1) that the word "property" in the statute includes the entire 800 acre tract and covers the mining plants and operations carried on by respondent on a portion thereof and the plant and operations of the sublessee on

---

[1] Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, §§ 23, 114:

"§ 23. Deductions from Gross Income

"In computing net income there shall be allowed as deductions:

* * * * * *

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * * "

"§ 114. Basis for Depreciation and Depletion

* * * * * *

"(b) Basis for Depletion—

* * * * * *

"(4) Percentage depletion for coal and metal mines and sulphur. The allowance for depletion under section 23(m) shall be, in the case of coal mines, 5 per centum * * * of the gross income from the property during the taxable year, excluding from such gross income an amount equal to any rents or royalties paid or incurred by the taxpayer in respect of the property. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property. * * * *"

Treasury Regulations 86, promulgated under the Revenue Act of 1934:

"Art. 23(m)–1. Depletion of mines, oil and gas wells, other natural deposits, and timber; depreciation of improvements.—
* * *

"(b) A 'mineral property' is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction. The value of a mineral property is the combined value of its component parts.

* * * * * *

"(j) 'The property' as used in section 114 (b) (2), (3), and (4) and articles 23 (m)–1 to 23(m)–19, inclusive, means the interest owned by the taxpayer, freehold or leasehold, in any mineral property. The taxpayer's interest in each separate mineral property is a separate 'property'; but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's interest in such mineral properties may be considered to be a single 'property', provided such treatment is consistently followed."

another portion; and (2) that, assuming that the sublease separated the 800 acres into two mineral properties, both are "included in a single tract or parcel of land" within the meaning of article 23(m)–1(j) of Regulations 86, and therefore must be considered to be a single property.

In its decision the Board assumed, without deciding, that the mineral interest covered by the sublease is a separate property from that in the acreage retained and operated by the taxpayer. A similar question had been before the Board in cases involving oil leases, and the Board had held in those cases that when a taxpayer had granted leases to different oil companies under separate leases the taxpayer had as many separate properties for purposes of computing depletion as he had given leases. J. T. Sneed, Jr., v. Commissioner, 40 B.T.A. 1136, affirmed in Sneed v. Commissioner, 5 Cir., 119 F.2d 767; Allie M. Turbeville v. Commissioner, 31 B.T.A. 283, affirmed in Turbeville v. Commissioner, 5 Cir., 84 F.2d 307; Vinton Petroleum Co. of Texas v. Commissioner, 28 B.T.A. 549, affirmed in Vinton Petroleum Co. of Texas v. Commissioner, 5 Cir., 71 F.2d 420. These cases were not considered by the Board to be controlling of the question in the present case. We accordingly look to the law and the regulations themselves to determine whether the mineral property included in the sublease and operated by the sublessee and the mineral property retained and operated by the taxpayer constitute separate properties or a single property within the meaning of the statute.

Construing the statute and the regulations together it is clear that "in the case of coal mines" the term "the property" means "the interest owned by the taxpayer, freehold or leasehold, in any mineral property", that is in "the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction." All the terms of the definition are in the singular number and seem to imply and to have reference to a single coal mine operated by its owner and including the coal deposit to be extracted, the plant used in the operation of the mine, and that part of the surface necessary for the purpose of extraction of the coal. Each separate coal mine independently operated by its owner constitutes a separate "property" for all practical purposes in computing depletion.

The Board sustained the respondent's second contention, holding (1) that the two properties are "included in a single tract or parcel of land" within the meaning of the regulation and that for the purpose of computing depletion they must be considered a single property, and (2) that since the respondent was engaged in mining operations similar to those of its sublessee, the mining of the sublease was an integral part of respondent's own business enterprise, thus giving the taxpayer the right to lump together with its own revenue the income produced from the sublease for the purpose of computing depletion.

The important problem to be determined, therefore, on this review is whether "the taxpayer's interest" in the two properties "may be considered to be a single 'property'" within the meaning of article 23(m)–1(b) and (j) of Regulations 86. The test prescribed is that

1. The income from both properties must be consistently treated by the taxpayer as arising from a single property in computing depletion allowance;

2. There must be an "interest" "owned by the taxpayer" in both properties; and

3. The two properties must be "included in a single tract or parcel of land."

Unless all of these conditions coexist the income from the two properties may not be combined for the purpose of computing depletion.

The first requirement is not in dispute. The Board found the fact to be that the respondent had "consistently treated the income from its own operations and those of its sublessee as arising from a single property in computing depletion allowance." Although we find no testimony in the record, and nothing in the stipulation of facts, to support such finding, the Commissioner made no complaint with reference to it. We accept the finding as satisfying the first element of the required test.

The second element of the test is that the taxpayer must own an "interest" in both "mineral properties" in order to consider them to be a single "property" for the purpose of computing depletion. In considering the application of this test two questions arise in respect of the meaning of the word "interest" as used in the regulation. They are: (1) What is the nature of the "interest" which the taxpayer must own in the properties? And (2) must the interest of the taxpayer in the two properties

be identical? The answer to both these questions should be found in article 23(m)–1(j) of Regulations 86. The word "interest" is used three times in subsection (j) and is apparently used in the same sense in each instance. There is nothing to indicate that it has a different signification in any case. First, the text reads, "The property", as used in the statute, "means the *interest* owned by the taxpayer, *freehold or leasehold,* in any mineral property"; second, "The taxpayer's *interest* in each separate mineral property is a separate 'property'"; and, third, "where two or more mineral properties are included in a single tract or parcel of land, the taxpayer's *interest* in such mineral properties may be considered to be a single 'property.'" (Italics supplied.) We think the inference is inescapable that the word "interest" is used throughout the regulation to mean a freehold or a leasehold estate in a mineral property. Nothing seems plainer. No amplification of words could make the meaning clearer. It is equally clear that the "interest" of the taxpayer in the properties, the income from which is sought to be combined or lumped together for computing depletion, must be either a freehold or a leasehold. The words "freehold" and "leasehold" appear to be used in an exclusive sense. The taxpayer must own the mineral property either as a freehold, that is absolutely, or as a leasehold, that is, as lessee. No other combination of interest is provided for.

■ Before applying the conclusion thus drawn from the context of subsection (j), a further inquiry is necessary. It is: What is included in the property in which the taxpayer is required to own a freehold or a leasehold estate? As observed in the preceding paragraph, subsection (j) reads: "The property", as used in the statute, "means the interest owned by the taxpayer, freehold or leasehold, in any mineral property." Subsection (b) provides: "A 'mineral property' is [1] the mineral deposit, [2] the development and plant necessary for its extraction, and [3] so much of the surface of the land only as is necessary for purposes of mineral extraction." The "interest" of the taxpayer, therefore, in the mineral properties, the income from which is sought to be combined as derived from a single property, must include these three factors, (1) the mineral deposit, (2) the plant for its extraction, and (3) the necessary surface of the land.

■ It scarcely requires further analysis to disclose that the taxpayer in the present case is not entitled to combine the income from its own operations with the royalties received from its sublessee for the purpose of computing depletion. At the mine operated by the taxpayer it has a leasehold estate in the mineral deposit and in the necessary surface of the land, and it owns outright the plant, furnishes the capital and manages and controls the business operations connected with extracting and marketing the coal. At the other mine the taxpayer owns a covering leasehold, but it does not own the plant nor furnish the capital to operate it; and it has no control over the management. Its "interest" in the "mineral property" and the mining operations is neither freehold nor leasehold. In granting a sublease to the Blue Ribbon Mining Company, the taxpayer, in so far as it could legally do so, divested itself of its rights in that part of the 800 acre tract included in the sublease, retaining only the right to receive and distribute the royalties provided for in the sublease and the obligation to account according to the provisions of its own lease with its lessor. The situation does not come within the provisions of subsection (j) of the regulation authorizing the taxpayer's interest in two or more mineral properties to be considered a single property.

In its opinion in this case the Board observes that "there must be some practical reason for the treatment of the two properties as one and that such a course of action arises not alone from the mere fact of common ownership. In the instant case, the petitioner [respondent] was engaged in mining operations similar to those of its sublessee, the mining of the sublease was an integral part of its own business enterprise." It was held that this was "good cause" for the taxpayer "to treat the proceeds from both sources as arising from its own business operations." This seems to us to be based upon a ground outside the regulations and upon facts not found to exist. Ownership by the taxpayer of an "interest" in both mineral properties, inclusion of both properties in a "single tract or parcel of land", and consistent treatment in the method of computing depletion are the only requirements of the regulation to justify the aggregation of the incomes from two or more properties for allowance of percentage depletion. To add similarity of operations is to amend the regulations. Further, there are no facts to support the con-

clusion that the mining of the sublease was an integral part of the taxpayer's own business operations. The facts found by the Board are inconsistent with such a conclusion. Inherent in the concept of a business enterprise is the idea of an investment of capital, labor, and management in an undertaking for profit. One of the recognized attributes of a "business enterprise" is centralized management and control. This fact has been frequently referred to and often emphasized in tax cases. Morrissey v. Commissioner, 296 U.S. 344, 359, 56 S.Ct. 289, 80 L.Ed. 263; Zonne v. Minneapolis Syndicate, 220 U.S. 187, 191, 31 S.Ct. 361, 55 L.Ed. 428; Von Baumbach, Collector, v. Sargent Land Company, 242 U.S. 503, 514, 515, 37 S.Ct. 201, 61 L.Ed. 460; United States v. Rayburn, 8 Cir., 91 F.2d 162, 168; Fidelity-Bankers Trust Co. v. Helvering, 72 App.D.C. 1, 113 F.2d 14; Green v. Frazier, 44 N.D. 395, 176 N.W. 11, 17; State ex rel. v. Lakewood Cemetery, 197 Minn. 501, 267 N.W. 510, 512; United States Glue Co. v. Town of Oak Creek, 161 Wis. 211, 153 N.W. 241, 243, Ann.Cas.1918A, 421; United States v. Emery, Bird, Thayer Realty Company, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; McCoach v. Minehill & Schuylkill Haven Railroad Co., 228 U.S. 295, 33 S.Ct. 419, 57 L. Ed. 842. The taxpayer and its sublessee in this case were both coal mining corporations. There is no finding that the taxpayer either owned an interest in or participated in the management and control of the business enterprise of its sublessee. The mining operations of the two corporations were distinct and separate. In the Zonne case, supra, the Supreme Court held that a corporation owning and leasing land for business purposes, but not participating in the "control and management of the property" [220 U.S. 187, 31 S.Ct. 362, 55 L.Ed. 428], was not "doing business" within the meaning of the Corporation Tax Law, 36 Stat. 112, although the lessor collected the rentals and distributed them according to the provisions of its charter. To the same effect was the decision in United States v. Emery, Bird, Thayer Realty Company, supra. In McCoach v. Minehill & Schuylkill Haven Railroad Co., supra, it was held that a railroad company which leases its lines to another railroad company without retaining any part in the control and management of its operations is not engaged in business. These cases hold that it is what a corporation does, not what it has power to do, which determines the question; doing business means to control and manage those activities which are pursued for "profit and gain"; and merely collecting and distributing rents and royalties as lessor is not such a business activity. In the present case the business enterprises of the taxpayer and of its sublessee are entirely distinct and separate. Neither was an integral part of the other.

We hold that the unity of "interest" required by the regulation in the two "mineral properties" involved is wanting, and that therefore the taxpayer was not warranted in combining the income from both properties for the purpose of computing depletion.

The result reached in the preceding paragraph makes it unnecessary to determine whether the two properties involved in this case are "included in a single tract or parcel of land." Whether they are so included or not is immaterial in view of the taxpayer's limited interest in the "mineral property" included in the sublease.

The decision of the Board is reversed and the determination of the Commissioner is affirmed.