441 So.2d 598 (1983)
Ex parte State of Alabama Department of Revenue.
(In re STATE of Alabama
v.
CHESEBROUGH-PONDS, INC.)
82-497.
Supreme Court of Alabama.
August 12, 1983.
Rehearing Denied September 23, 1983.
*599 Charles A. Graddick, Atty. Gen., and B. Frank Loeb, Chief Counsel, and Bill Thompson, Asst. Counsel, Dept. of Revenue, and Asst. Attys. Gen., for petitioner.
Robert C. Walthall of Bradley, Arant, Rose & White, Birmingham, for respondent.
E.T. Brown, Jr. and Roy J. Crawford of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for amicus curiae Coca-Cola Co.
JONES, Justice.
This case involves an appeal by the State Revenue Department (Department) under Ala.Code 1975, § 40-2-22, from a circuit court judgment, affirmed by the Court of Civil Appeals, favorable to the taxpayer, Chesebrough-Ponds, Inc. (Chesebrough). The issue, one of first impression, concerns the proper calculation of the Alabama income tax deduction allowed Chesebrough for 1978 under Ala.Code 1975, § 40-18-35(3). This section allows a corporation to deduct on its Alabama income tax return a percentage, computed by a statutory formula (apportionment ratio), of its federal income tax liability. The percentage deduction allowed a foreign corporation is "the ratio that the net income ... of the corporation on business done within Alabama bears to its net income ... from business *600 done both within and without the state of Alabama." We must decide whether intercompany dividends received by Chesebrough from its subsidiaries in 1978 should be considered "net income from business done" as that term is used in the apportionment ratio. We hold that intercompany dividends are income from business done within the meaning of § 40-18-35(3), and, accordingly, reverse the judgment below.
The relevant facts are basically undisputed. In 1978, Chesebrough was a foreign corporation doing business in Alabama and was the parent corporation of fifteen subsidiaries doing business in the United States. Chesebrough and its fifteen subsidiaries jointly filed a consolidated federal income tax return that year. Because Alabama does not permit the filing of consolidated returns, Chesebrough filed a separate Alabama return, reflecting apportionable federal income tax of $13,130,566. In computing the deduction applicable to Alabama income, Chesebrough excluded from the apportionment ratio intercompany dividends received from its subsidiaries. This exclusion increased the percentage of total federal tax liability claimed as a deduction in Alabama from approximately two percent to seven percent, thereby reducing Chesebrough's Alabama income tax liability by $31,617. The Department disallowed intercompany dividends as "income, from business done both within and without the state of Alabama."
Chesebrough appealed the Department's final assessment to the Montgomery County Circuit Court, contending that net income in the apportionment ratio should exclude items not taxable under federal income tax law. Because intercompany dividends were not taxable under federal income tax law, Chesebrough asserted that including such dividends as net income in apportioning the federal income tax deduction was improper and distortive. Furthermore, Chesebrough argued that, under Department Regulation 31.2, intercompany dividends are categorized as "non-business" income, and therefore are not "income from business done."
The Department contended that the definition of net income in the apportionment ratio should be that definition specifically set out in Ala.Code 1975, § 40-18-33, rather than being controlled by federal law. In addition, the Department argued that the term "non-business income" in Regulation 31.2 was merely a term used in a uniform agreement, adopted subsequent to the enactment of § 40-18-35, which created a uniform method of computing state income tax liability of multistate corporations, and that the term pertained only to the regulation itself, not to § 40-18-35(3).
The circuit court agreed with Chesebrough and set aside the Department's assessment. The Court of Civil Appeals unanimously affirmed the judgment, primarily upon reasons articulated in the circuit court's well-drafted opinion, stating:
"[W]e find that `net income from business done' and `business income' ... for the purpose of apportioning federal income tax deductible under § 40-18-35 are the same. The dividend income ... would not be subject to federal income tax as business income. To include such dividends in the equation to determine an apportionment of federal income tax paid and deductible for the business done in Alabama would be to use a factor not used in determining the total federal income tax."
State of Alabama v. Chesebrough-Ponds, Inc., 441 So.2d 596 (Ala.Civ.App.1983).
The parties to this appeal, and amicus curiae, make essentially the same arguments as advanced below.

THE DECISION
State law controls the proper calculation of a state income tax deduction. Standard Oil Co. v. State, 55 Ala.App. 103, 313 So.2d 532, 538 (1975). Reliance upon federal law to determine components of income includable in Alabama's apportionment *601 ratio, as was had below, is inappropriate; Alabama law controls.[1]
No definition of "net income from business done" appears in our statutes; and we have not found, or been cited to, any case dealing with the precise legal issue which confronts us. Therefore, we must determine whether intercompany dividends are "net income from business done" based on close scrutiny of related statutory provisions utilizing general rules of statutory construction. We note that, ordinarily, a statutory tax deduction or exemption is a matter of legislative grace and should be strictly construed for the taxing authority and against the taxpayer. Here, however, the federal income tax deduction is not merely legislative grace; rather, it is granted to corporations by Amendment 212 of the Alabama Constitution, which reads:
"STATE TAX ON NET INCOME OF CORPORATIONS.
"The legislature shall have power to levy and provide for the collection of taxes for state purposes on net income of corporations, from whatever source derived, for the calendar year 1963, or for any fiscal year beginning in the calendar year 1963, and each year thereafter, at a rate not exceeding five percent. However, all federal income taxes paid or accrued within the taxable year by corporations shall always be deductible in computing net income taxable under the income tax laws of this state, provided that in the case of foreign corporations the amount of federal income tax deductible shall be in proportion to income derived from sources within Alabama, to be determined in accordance with such laws as the legislature may enact."
The following related statutes control our decision:
"§ 40-18-33. Net income of corporations defined.
"In the case of a corporation subject to the tax imposed by section 40-18-31, the term `net income' means the gross income as defined in section 40-18-34, less the deductions allowed by section 40-18-35 and the net income shall be computed on the same basis as provided in section 40-18-13.
"§ 40-18-34. Gross income of corporations defined.
"In the case of a corporation subject to the tax imposed by section 40-18-31, the term `gross income' means the gross income as defined in section 40-18-14.... In the case of a foreign corporation, gross income includes only the gross income from sources within this state, including the interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise, dividends from resident corporations, and including all amounts received, although paid under a contract for the sale of goods or otherwise, representing profits on the manufacture of goods within this state and the profits on the disposition of goods within this state.
"§ 40-18-14. Gross income of individuals.
"The term `gross income' as used herein:
"(1) Includes gains, profits and income derived from salaries, wages or compensation for personal services of whatever kind, or in whatever form paid ... also from interest, royalties, rents, dividends, securities or transactions of any business carried on for gain or profit and the income derived from any source whatever, including any income not exempted under this chapter and against which income there is no provision for a tax....
"....
"(3) The term `gross income' shall mean and include all of such income arising from sources within and without the state whether paid to residents or nonresidents, *602 including interest on bonds, notes or other interest-bearing obligations of residents, corporate or otherwise, and all amounts received, although paid under a contract for the sale of goods or otherwise, representing profits in the manufacture and disposition of goods within or without the state of Alabama. It shall also mean and include interest, dividends, except stock dividends as defined herein, or other forms of income from and gains of profits realized upon the sale, exchange or other disposition of all forms of intangible personal property owned by or held anywhere within or without the state of Alabama for the account of any resident or domestic corporation.
"§ 40-18-35. Deductions allowed corporations generally.
"In computing the net income of domestic corporations doing business in this state subject to the tax imposed by section 40-18-31, there shall be allowed as deductions items described in the following numbered subdivisions of this section. In computing the net income of foreign corporations doing business in this state subject to the tax imposed by section 40-18-31, there shall be allowed as deductions the items described in the following numbered subdivisions of this section, but only if, and to the extent that, such items are referable to or arise in connection with income of such corporations arising from sources within the state of Alabama; the proper apportionment and allocation of deductions of such foreign corporations with respect to the income arising from sources within and without the state of Alabama shall be determined under the rules and regulations prescribed by the department of revenue; provided, that in the case of foreign corporations doing business partly within and partly without Alabama where income is apportioned and allocated to Alabama the expense incurred by such corporation in connection with earning such income shall be apportioned to Alabama in such manner as shall fairly reflect the net income of the corporation attributable to its operations in Alabama; provided, that none of the deductions allowed by subdivision (12) of this section shall be subject to any such apportionment or allocation and all thereof shall be allowed in full, any provisions thereof to the contrary notwithstanding. Subject to the limitations contained in the preceding sentence, there shall be allowed as deductions in computing the net income of corporations:
"....
"(3) Taxes paid or accrued within the taxable year imposed (i) by the authority of the United States; (ii) by authority of any of its possessions; or (iii) by the authority of any state or territory, or any county, school district, municipality, or other taxing subdivision of any state or territory not including income tax and not including those assessed for local benefits of a kind tending to increase the value of the property assessed but excluding the income taxes levied and imposed under this title. In the case of a foreign corporation, taxes paid or accrued within the taxable year imposed by the authority of the state of Alabama or any county, school district, municipality or any other taxing subdivision of the state of Alabama excluding the income taxes levied and imposed under this title and the amount of taxes other than income taxes imposed by other authorities mentioned in this subdivision which shall be deductible by such foreign corporations shall be determined by the ratio that the gross income of the foreign corporation from sources within the state of Alabama bears to its gross income from all sources both within and without the state of Alabama; the amount of federal income tax which shall be deductible by such foreign corporation shall be determined by the ratio that the net income, as computed without any deduction for any applicable federal, state or local taxes on net income or any federal or state or local taxes measured by net income, of the corporation on business done within Alabama bears to its net income, as computed without any deduction for any applicable *603 federal, state or local taxes on net income or any federal or state, or local taxes measured by net income, from business done both within and without the state of Alabama...."
In analyzing these statutes, we emphasize no dispute exists regarding the amount of net income from business done within Alabama, or regarding the amount of federal tax liability, which, necessarily, is a matter controlled by federal law. Our focus of inquiry is whether intercompany dividends, not part of federal net income, nevertheless are net income, under Alabama law, from business done within and without Alabama, and therefore includable in the denominator of the ratio which apportions the predetermined total deduction.
The parties dispute the significance of Department Regulation 31.2, which provides that intercompany dividends, considered "non-business" income, are to be allocated, for state income tax purposes, totally to the corporation's state of domicile (here, New York). Chesebrough contends that because of the Department's classification of intercompany dividends as "non-business" under this regulation, those dividends cannot be considered "from business done" as defined in § 40-18-35(3). We disagree.
In the middle 1960's, various states attempted to establish a uniform and fair system for taxing multistate corporations. Alabama adopted the Multistate Tax Compact, § 40-27-1, et seq., in 1967, which spawned Regulation 31.2. The terms "business income" and "non-business income," defined in Article IV of the Act, did not exist previously, and were merely a method of equitably determining the tax situs of income generated by multistate corporations. Therefore, these phrases are applicable only within the context of Regulation 31.2. Neither party contends any portion of Chesebrough's intercompany dividends should be allocated as income produced in Alabama.
Having determined that the definition of "business income" in Regulation 31.2 is not equivalent to the definition of "from business done" in § 40-18-35(3), we now examine the relevant statutes. Net income under Alabama law is defined in § 40-18-33 as gross income defined in § 40-18-34, less the deductions allowed by § 40-18-35. Intercompany dividends are not deductible under § 40-18-35, or any other Alabama statute. Section 40-18-34 states that "gross income" for corporations means gross income defined in § 40-18-14. Section 40-18-14 states that gross income includes "gains, profits and income" derived from numerous items including "interest, royalties, rents, dividends, securities and transactions of any business carried on for gain or profit and the income derived from any source whatsoever, including any income exempted under this chapter and against which income there is no provision for a tax." (Emphasis added.)
Thus, all income received by Chesebrough, unless exempt from Alabama law, constitutes gross income under § 40-18-14, whether that income is taxed in Alabama or not. Net income is determined by subtracting from gross income the deductions allowed under § 40-18-35. As stated, intercompany dividends are not deductible under § 40-18-35. Consequently, intercompany dividends received by Chesebrough constitute gross income under Alabama law and, not being deductible under § 40-18-35, also constitute net income. As part of Alabama net income, the dividends, which are from sources outside Alabama, must be included in the denominator of the apportionment ratio if from "business done." In the present case, Chesebrough's intercompany dividends are not includable in the numerator of the ratio as net income within Alabama simply because they are not derived "within Alabama," although they are part of net income. If Chesebrough had been domiciled in Alabama instead of New York, then all intercompany dividends would have been allocated directly to Alabama for purposes of determining net income taxable within Alabama.
The last sentence of § 40-18-34 provides: "In the case of a foreign corporation, gross income includes only the gross income from *604 sources within this state...." This section complicates our analysis, because, on first blush, it tends to indicate that the net income of a foreign corporation is gross income, as defined in § 40-18-14, but limited only to gross income derived from sources within Alabama, as opposed to all sources. If this definition of a foreign corporation's gross income was strictly applied to the ratio set out in § 40-18-35(3), then the denominator, net income from business both within and without Alabama, would be reduced to only net income from business within Alabama; that is, the numerator and denominator would be the same.
Every foreign corporation doing business in Alabama could deduct its entire federal tax liability, regardless of the percentage of business done in Alabama, because the apportionment ratio would be 100 percent. The legislature surely did not intend such a nonsensical result, and the only logical interpretation is to define "net income from business done both within and without Alabama" as gross income, as set out in § 40-18-14, from whatever source both within and without the state. This definition includes income received by Chesebrough in the form of intercompany dividends. Such dividends are not removed from the Alabama definition of net income just because they are not taxable in Alabama. Section 40-18-14 includes in gross income "all income derived from any source whatever ... and against which income there is no provision for a tax."
Chesebrough argues that, even if intercompany dividends are part of net income under Alabama law, they are not includable in the apportionment ratio because they are not derived "from business," as that phrase is used in the ratio. The Department maintains that the term "net income from business" includes gross income from all sources and however derived, less the deductions allowed under Alabama law. We agree with the Department.
All income earned by Chesebrough arises from some business activity. The intercompany dividends in question are paid to Chesebrough by one or more of the fifteen subsidiaries with which it files a consolidated federal return. The dividends received from the stock represent a portion of the profits of the subsidiary. Obviously, such dividend income resulting from Chesebrough's investments in its subsidiaries is business income. We hold that "business income," as used in the ratio, is not limited to income from Chesebrough's primary activity, retail sales. That term must include income from all transactions, including dividend income from investments in stock.
In Union League Club v. Johnson, 108 P.2d 487 (Cal.Dist.Ct.App.1941), "business" was deemed to mean any activity or enterprise for gain, benefit, advantage, or livelihood. In O'Neil v. United Producers and Consumer's Co-op, 57 Ariz. 295, 113 P.2d 645 (1941), the term was defined as any activity which benefits a corporation's organizers or members. In Helvering v. Jewel Mining Co., 126 F.2d 1011, 1015 (8th Cir.1942), the court stated that "doing business means to control and manage those activities which are pursued for `profit or gain.'"
We think investing in the stock of other corporations is a business activity, and any profit derived therefrom is "from business done," as that phrase is used in § 40-18-35(3). The judgment appealed from is hereby reversed, and the cause is remanded to the Court of Civil Appeals for an order consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES, EMBRY, BEATTY, and ADAMS, JJ., concur.
MADDOX and ALMON, JJ., dissent.
MADDOX, Justice (dissenting).
I am of the opinion that the opinion of the Court of Civil Appeals correctly interprets Alabama's tax laws in this case; therefore, I respectfully dissent.
ALMON, J., concurs.
NOTES
[1] For a recent United States Supreme Court case dealing with California's "formula apportionment" in its imposition of a corporate franchise tax geared to income, in which the Court upheld the State's taxing scheme as against a Due Process and Commerce Clauses challenge, see Container Corporation v. Franchise Tax Board ___U.S.___, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).