714 P.2d 434

**TEMPE LIFE CARE VILLAGE, INC., an Arizona non-profit corporation, Plaintiff-Appellee,**

v.

**CITY OF TEMPE, a municipal corporation, Defendant-Appellant.**

**No. 1 CA–CIV 7419.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 10, 1985.

Reconsideration Supplemental Opinion Denied Nov. 7, 1985.

Review Denied Feb. 19, 1986.

Killian, Legg, Nicholas, Fischer, Wirken, Cook & Pew by Charles W. Wirken, Mesa, for plaintiff-appellee.

David P. Merkel, Tempe City Atty. by Vincent A. Iannone and Dennis M. O'Neill, Asst. City Attys., Tempe, for defendant-appellant.

## OPINION

EUBANK, Judge.

Tempe Life Care Village, Inc., [hereinafter "Village"] is an Arizona nonprofit corporation which operates Friendship Village of Tempe, a lifetime residential and health-care facility for senior citizens, located in the city of Tempe, Arizona. Since November 25, 1978, Village has maintained the status of a federally tax-exempt organization under § 501(c)(3) of the Internal Revenue Code of 1954, as amended. At issue in this case is the applicability of Tempe's transaction privilege tax ordinance to various activities conducted by Village.

In 1982, after an audit had been conducted by Tempe officials, Village was assessed by Tempe pursuant to its transaction privilege tax ordinance for activities which Tempe believed constituted rental, food service and transportation for hire. Although the Tempe City Council abated any taxes which might have been assessed for operations prior to the audit date, it was determined that Village would henceforth be subject to the tax. Village paid the assessment under protest and continued to pay subsequent assessments under protest. After its requests to Tempe for relief had been denied, it filed this suit in Maricopa County Superior Court contending that it was not subject to the Tempe transaction privilege tax. The parties filed cross-motions for summary judgment. For purposes of obtaining a ruling on the cross-motions for summary judgment, the parties stipulated to the following facts concerning the operations of Friendship Village:

The concept of Plaintiff's organization is to cover the costs of growing old as a group function. Such cost coverage consists of providing medical services, food service, housing, recreation, housekeeping and other personal needs to the community as a whole. Residents participate in one daily meal together. They reside in cottages and apartments. They do not have exclusive possession against the Village and their rights are not assignable. Transportation is provided to all who wish to use it. Recreational activities are conducted daily. The grounds and buildings are cared for by crews of workers. A clinic is in the Village for out-patient care as well as for hospitalization. Instead of each individual resident picking up the cost of living, the Village as a whole pays for the utilities, refuse collection, food, local phone services, domestic and laundry services, and all other costs. To pay for these pooled services, residents combine their money in two ways. They pay a one-time endowment which enables them to

live at the Village for life. The amount of this endowment is computed actuarially based on insurance theory. The unused portion of the endowment from a person who does not live at the Village very long offsets the extended needs of a person who spends many years in residence. The insurance concept goes even further. To protect all the residents from financial failure of their collective effort, the Commissioner of Insurance for the State of Arizona has a lien against the premises of the Plaintiff.

Secondly, each resident pays a monthly fee to cover current costs of resident care, dietary service, maintenance, housekeeping and administration. This fee fluctuates and is set by the Board of Directors of the Plaintiff.

The Board of Directors is selected in accordance with By-Law provisions of the Plaintiff's organization. Management of the Village is contracted out to a corporation specializing in rendering life care services.

The trial court denied Tempe's motion for summary judgment and granted the motion for summary judgment of Village. The trial court found Village entitled to judgment because the activities Tempe sought to tax were not subject to the City of Tempe's transaction privilege tax both because they did not constitute "business" within the meaning of the Tempe City Code, and because they did not constitute the taxable activities of rental of real property, transportation for hire or food service within the meaning of the Tempe City Code. The trial court awarded Village all monies it had paid to Tempe to date pertaining to the tax assessments together with interest from the date that the payments had been made. Tempe filed an objection to the form of judgment, arguing that the interest award should not be allowed. Tempe appeals from the judgment and from the subsequent denial of its objection to the form of judgment.

■ We first consider two jurisdictional issues raised by Village. Without making any argument, Village seems to suggest that this court lacks jurisdiction over the appeal due to the holding in *Sarwark v. Thorneycroft*, 123 Ariz. 1, 596 P.2d 1173, *approved* 123 Ariz. 23, 597 P.2d 9 (1979) and due to the express mention in the Tempe City Code that suit may be filed by a tax protester in superior court, with no mention that any further review may be sought through the courts.

We agree with Tempe that nothing in the *Sarwark* case or the Tempe City Code precludes our review of the ruling made by the superior court in this instance. In *Sarwark* we were concerned with judicial review of decisions made by state administrative agencies. We held that the Administrative Review Act, A.R.S. § 12–901 *et seq.*, which provides for review of agency rulings by the superior court, and review of the superior court ruling by the appellate courts, is not applicable when independent statutory review of the rulings of a particular agency is provided. In that case a specific judicial review statute for certain rulings of the Department of Transportation limited review to the superior court, and therefore we found that this court had no jurisdiction to review the superior court's decision.

■ In this case, we are concerned with a charter city's enforcement of its ordinances, not with a ruling made by a state administrative agency. We have not been cited to any statute enacted by the legislature limiting judicial review of decisions concerning city ordinances. While we do not find from reading the city ordinance that Tempe has attempted to limit review of its enforcement of its tax ordinance to the superior court, we also note that a city has no authority to limit the jurisdiction of the state's courts which obtain their jurisdiction from the state constitution and statutes. *Schoenberger v. Board of Adjustment*, 124 Ariz. 528, 606 P.2d 18 (1980). Since no specific limitation on our jurisdiction to hear this case exists, we have jurisdiction pursuant to A.R.S. § 12–120.-21(A)(1) which grants appellate jurisdiction "... in all actions and proceedings originat-

ing in or permitted by law to be appealed from the superior court...."

■ Secondly, Village contends that this court has no jurisdiction to consider the appeal from the denial of the objection to the form of judgment because Tempe filed its notice of appeal prior to the time that a formal order denying the objection to the form of the judgment had been entered. This issue has been decided adversely to Village's contention. The Arizona Supreme Court has held in *Barassi v. Matison*, 130 Ariz. 418, 636 P.2d 1200 (1981) that under the Arizona Rules of Civil Appellate Procedure which were enacted in 1977 a premature appeal is not jurisdictionally defective. The court held that "a premature appeal from a minute entry order in which no appellee was prejudiced and in which a subsequent final judgment was entered over which jurisdiction may be exercised need not be dismissed." *Id.* at 422, 636 P.2d at 1204. Since Village has shown no prejudice, we do not find that the filing of a premature appeal provides grounds for dismissal.

Having found no jurisdictional defect to hearing this appeal, we proceed to the substantive issues. Tempe argues that the trial court erred in finding that Village was not engaged in "business" as defined in the Tempe City Code and that it was not engaged in specific taxable business activities pursuant to the code.

Tempe's transaction privilege tax is a tax "measured by the amounts or volume of business transacted by persons on account of their business activities" and is derived from "gross proceeds of the sale or gross income" from the business. Tempe City Code § 33–16. Obviously, an entity in order to be taxed must be conducting "business" within the definition of the Code. "Business" is defined in § 33–11(3) to include "all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of apparent gain, benefit or advantage, either direct or indirect." Within the definition of "business," the Code clarifies that isolated casual activities not connected with nor related to other taxable business activities are not included as "business," with the exception that the rental or lease of property even if isolated is almost always considered taxable business activity. Proceeds from rental or lease of property are taxable if the owner advertises the property for rent, receives $1,000 or more from the rental, rents for thirty days or more, or rents with an option to buy. § 33–11(3)(a, b, c and d).

Not only must the entity be engaged in "business," but it must be engaged in the specific business activities which the Code enumerates in § 33–16(1) to (14). In determining that Village was engaged in taxable business activity, Tempe charged that village was transporting persons for hire pursuant to subsection (1), serving food in the manner of a restaurant, dining room or lunch room pursuant to subsection (10), and leasing real property pursuant to subsection (14). The latter subsection further provides that proceeds from hospitals or nursing facilities primarily providing room and board rather than hospital or nursing care service shall be taxable except that deductions may be claimed for actual medical service invoiced separately to an occupant. The Code then enumerates various exemptions from taxation including an exemption for "[p]rofessional services, instruction and other services not connected with the making of retail sales." § 33–17(3).

We first consider whether Village was engaged in "business" which would have included any activities "engaged in with the object of apparent gain, benefit or advantage." Village points out that it is a "nonprofit" corporation. It argues that Tempe has failed to show any way in which Village acts for its own gain, benefit or advantage and that Tempe even concedes that the activities of Village are calculated to benefit its members, the senior citizens, rather than the entity itself. In response, Tempe argues that the Arizona Supreme Court in *O'Neil v. United Producers & Consumers Cooperative*, 57 Ariz. 295, 113 P.2d 645 (1941) has held that it is immaterial that a nonprofit corporation's members

experience the gain, benefit or advantage, rather than the corporation itself. In *O'Neil,* the state sought to impose an excise tax on the activities of United Producers and Consumers Cooperative, a nonprofit corporation, whose function was to purchase farm supplies and equipment to turn over to its members at cost plus handling expenses and market the agricultural products of its members for their benefit. Under the taxing statute involved in that case, the definition of "business" was nearly identical to that in the Tempe City Code. The statute in *O'Neil,* A.R.S. § 42–1301(2), provided:

> "Business" includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage either directly or indirectly, but not casual activities or sales.

The Supreme Court found that the activities of the nonprofit corporation were causing its members to experience gain, benefit or advantage. The Court held that any activities carried on by the corporation which benefit its organizers or members constitutes business within the meaning of this provision.

■ Village does not deny that the senior citizens who pay the endowment and monthly assessment to have the use of Village's facilities are "members" of the nonprofit corporation to the same extent that the cooperative in *O'Neil* had members. Pursuant to the holding of *O'Neil,* the fact that Village is a nonprofit corporation does not prevent its activities from being taxed if its activities provide "benefit, gain or advantage" to its members. Clearly the activities of Village benefit its members in providing collectively for their needs of living more efficiently than each individual could do on his own. So, too, the members benefit from having the many chores of daily life performed for them and from having all worry taken away that they will ever be unprovided for in their old age. While some of these benefits may not be monetary, it has repeatedly been pointed out by other courts interpreting similar statutes that "gain," "benefit" and "advan-

tage" convey a meaning wider in scope than the word "profit." *See, e.g., City of Seattle v. State,* 59 Wash.2d 150, 367 P.2d 123 (1961); *Union League Club v. Johnson,* 18 Cal.2d 275, 115 P.2d 425 (1941).

Village cites Arizona cases which state that in construing privilege tax provisions, "business" is to be given its ordinary meaning. *See, e.g., Miami Copper Company v. State Tax Commission,* 121 Ariz. 150, 589 P.2d 24 (App.1978), *cert. denied* 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660; *Arizona State Tax Commission v. First Bank Building Corporation,* 5 Ariz.App. 594, 429 P.2d 481 (1967). Village cites this proposition apparently to suggest that under the ordinary definition of "business" the entity itself experiences the gain, benefit or advantage. This argument avails Village nothing since the Arizona Supreme Court has specifically indicated in *O'Neil* that the gain, benefit or advantage may be to the corporation's members rather than to itself.

Village argues that the *O'Neil* decision is incorrect in holding that an organization which does not act for its own benefit, but merely for the benefit of its members, is engaged in business for purposes of the assessment of a transaction privilege tax. Whether or not we agree with the decision in *O'Neil,* it is the decision of the Supreme Court of this state and continues to be the law until overruled by that court. The court of appeals is not empowered to overturn a decision of the Supreme Court. *State v. Korte,* 115 Ariz. 517, 566 P.2d 318 (App.1977).

Further, Village argues that its situation should be distinguished from that of the nonprofit corporation in *O'Neil* because not only is Village a nonprofit corporation but its activities are strictly of a charitable nature, providing for the daily living needs of elderly citizens, and its income is exempt under the Internal Revenue Code § 501(c)(3). Village cites this court to *In re Tax Appeal of Central Union Church—Arcadia Retirement Residence,* 63 Hawaii 199, 624 P.2d 1346 (1981) as a case to help

explain the charitable, nonbusiness nature of the activities of an organization such as Village. We do not find this case to be of much assistance to Village. In *Arcadia*, the state sought to assess a general excise tax on fees generated by a nonprofit retirement home for elderly persons which was run by a church. The concept for the retirement home in that case is similar to that of Village. Prior to admission, the residents executed "lifetime care agreements" and paid lump sum entrance fees. The residents were also assessed monthly service fees to cover operating costs. All fees were used exclusively in furtherance of the purpose of providing the home for the aged. In *Arcadia*, however, there was a statute which exempted charitable activities from taxation under the state excise tax. The issue, then, was whether these activities were of a charitable nature, and the court concluded that they were.

■ Unlike *Arcadia*, we are presented with no provision in the Tempe City Code or with other state or federal law which would exempt activities performed for a charitable purpose from Tempe's transaction privilege tax if the activities would otherwise be considered "business." In *Arcadia*, the Court did not consider whether the activities of the retirement home would have been subject to the excise tax if they had not been specifically exempted from taxation. Village has cited no authority that a charitable organization engaging in activities benefiting itself or its members is not subject to a transaction privilege tax even though not expressly exempted from payment of the tax. We note that in *Young Men's Christian Association v. State*, 62 Wash.2d 504, 383 P.2d 497 (1963), the Supreme Court of Washington held that a charitable institution conducting such activities which benefited itself or its members would be subject to business and occupation taxes.

Finally, regarding the Internal Revenue Code § 501(c)(3), homes for the aged are exempt if they satisfy three primary needs of aged persons: (1) the need for housing, (2) the need for health care, and (3) the need for financial security. *See* 34 Am. Jur.2d, Federal Taxation, Section 7924 (1984). Certainly, Village fits these criteria. However, as noted above, there is no exemption from Tempe's transaction privilege tax provided in this Act.

We find that the trial court erred in ruling that Village was not engaged in "business" since its activities cause a clear gain, benefit or advantage to its residents who are its "members." We therefore conclude that Village is subject to Tempe's transaction privilege tax if its activities come within any of the specific business activities which the City seeks to tax. We now turn to this question.

■ The City argues that Village was engaged in the taxable activities of providing transportation for hire, providing meals, and renting housing. Village argues that the housing, meals, and transportation it provides are merely incidental to the whole gamut of professional services it provides including recreation, housekeeping, utilities, refuse collection, local phone service, laundry service, resident care, dietary service, maintenance, administration, and other personal needs. Village points out that § 33-17(3) of the Tempe City Code exempts "professional services, instruction and other services not connected with the making of retail sales."

We agree with Tempe. Meals and housing in particular can hardly be considered incidental in light of the whole package of goods and services which Village provides for its residents. If anything, most of the services Village claims to provide are "incidental" to the providing of room and board. We note that § 33-21 of the Tempe City Code provides that regulations on transaction privilege taxes adopted by the State Tax Commission when not in conflict with the Code provisions are considered part of the Code. The Arizona Department of Revenue regulation R15-5-1603(B) provides that charges such as "maid service, local telephone, utilities, cable television, or any other service" are deemed part of gross income for a person engaged in the business of renting. It is implicit within

this regulation that such services are "incidental" to the rental.

While it is possible that a portion of Village's gross sales could be excluded from taxation as attributable to professional services pursuant to § 33–17(3), in this case, Village has made no attempt to claim that any particular portion of its gross receipts are attributable to any particular activity which should be excluded. Village's argument for exclusion is all or nothing. Section 33–16(14) of the code specifically exempts medical expenses and the City has allowed such exemption and there is no issue concerning the amount of the exemption granted. Nor is there any suggestion that village is a facility primarily used for hospital or nursing care service so as to fall within the Code's exemption on proceeds for housing or food services from such facilities.

■ Village argues that its residents do not "lease" housing from it. Village cites to *Xerox Corporation v. United States*, 228 Ct.Cl. 406, 656 F.2d 659 (1981), in which arrangements for the use of Xerox machines were found to be service agreements rather than lease agreements, to suggest that the housing provided in this case was something other than a rental or lease of the premises. Village also argues that the entrance endowment does not constitute rent but is a form of insurance. We find that Village is trying to put form over substance in this instance. As the Arizona Supreme Court has said:

There is no magic in the word "lease." A lease is a species of contract for the possession and profits of tenements and land, either for life, or for a certain period of time, or during the pleasure of the parties.

*Joy Enterprises, Inc. v. Reppel*, 112 Ariz. 42, 46, 537 P.2d 591, 595 (1975). We have no trouble in concluding that the residents of Village, who obtain the right to reside at Village for life but who acquire no interest that may be passed on to anyone else, are leasing their housing from Village within the meaning of the term "lease" as contemplated by the Tempe City Code. Incidental-

ly we note that the Court in *Arcadia* characterized the residents of the retirement home in that case as having "lifetime leases" of apartments in the home.

In conclusion, we find that Village is engaged in taxable business activities within the Tempe City Code provisions. Having reached this outcome, it is unnecessary for us to consider the issue of prejudgment interest. For the reasons stated herein, we reverse the superior court ruling for Village and remand to the trial court for entry of summary judgment in favor of the City.

CORCORAN and FROEB, JJ., concur.

## SUPPLEMENTAL OPINION

EUBANK, Judge.

In its Motion for Reconsideration, Tempe Life Care Village (Village) presents an extensive legal argument continuing to question our jurisdiction to hear this tax appeal. Since additional authority to review this matter is cited, we deem it beneficial to all parties to supplement our opinion filed on September 10, 1985.

Village states in its motion for reconsideration:

The opinion rendered herein holds [in part] that:

"Since no specific limitation on our jurisdiction to hear this case exists, we have jurisdiction pursuant to A.R.S. § 12–120.21(A)(1) which grants appellate jurisdiction '... in all actions and proceedings originating in or permitted by law to be appealed from the superior court....'"

(At 436–37). Such a statement focuses upon the absence of a limitation upon jurisdiction rather than upon the existence of jurisdiction. However, it is not the position of Tempe Life Care Village (the Village) that the court of appeals would have jurisdiction of this appeal but for the existence of some limitation that defeats jurisdiction. Instead, the Village contends that the court of appeals lacks jurisdiction because none is conferred by any authority. Hence the Village's re-

liance upon Tempe City Code § 33–38(2) and *Sarwark v. Thorneycroft,* 123 Ariz. 1, 596 P.2d 1173, *approved* 123 Ariz. 23, 597 P.2d 9 (1979). The former because it provides for review in the superior court without mention of any further appeal. The latter because it holds that an administrative decision that is subject to superior court review pursuant to a statute providing therefor but that is silent as to appellate court review may not be appealed beyond the superior court pursuant to another more general appellate jurisdiction statute.

In its response to the motion, City of Tempe (Tempe) agrees with our opinion that we have jurisdiction of the tax appeal on the basis of A.R.S. § 12–120.21(A)(1), but also cites A.R.S. § 42–1339(B) which provides, in part, that "Either party to such action may appeal to the supreme court or court of appeals as provided by law." Under the facts here, A.R.S. § 42–1339(B) is made applicable to this issue by A.R.S. § 42–1339.01, which states in part:

The procedures for levy, collection and enforcement of payment of transaction privilege taxes levied by a city or town by such city or town shall be in the same manner as authorized by this chapter unless otherwise provided by the ordinance of such city or town.

As noted by Village, Tempe has not otherwise provided by ordinance, thus § 42–1339(B) applies and we have jurisdiction of this tax appeal.

Our opinion filed herein on September 10, 1985, is supplemented to this extent only. The motion for reconsideration is denied.

CORCORAN and FROEB, JJ., concur.