(40 South. 526.)

No. 15,934.

## STATE v. NEW ORLEANS CHESS, CHECKERS & WHIST CLUB.

(Jan. 15, 1906.    Rehearing Denied Feb. 12, 1906.)

1. LICENSES—BACK TAXES—COLLECTION.

The general license law of this state (Act No. 171, p. 387, of 1898) does not authorize the collection of additional license taxes for back years.

2. SAME—TRAVERSING STATEMENT OF APPLICANT.

Under section 19, p. 417, of Act No. 171 of 1898, the tax collector, if dissatisfied with the sworn statement of the applicant for a license, is directed to traverse the same by summary rule; but he must do so without delay, and before the license taxes become delinquent.

3. SAME.

Where a social club has for five successive years paid license taxes based on sworn returns which were accepted as correct by the taxing officers, no action will lie in behalf of the state to recover additional license taxes for the same years.

4. SAME—LIABILITY OF SOCIAL CLUB.

A social club is not subject to license taxation except in so far as it engages in the sale of intoxicating liquors to its members. State v. Boston Club, 12 South. 895, 45 La. Ann. 586, 20 L. R. A. 185.

5. INTOXICATING LIQUORS — LICENSE TAX — AMOUNT.

In ascertaining the amount of license taxes due by a social club engaged in the sale of intoxicating liquors to its members, the sales of other articles, at or from the bar, should not be added to gross sales of liquors.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Summary proceedings by the state against the New Orleans Chess, Checkers & Whist Club. Judgment for defendant, and the state appeals. Affirmed.

·Edward Rightor, for the State.  Charles Joseph Théard and McCloskey & Benedict, for appellee.  Samuel Louis Gilmore, City Atty., and John Patrick Sullivan and St. Clair Adams, Asst. City Attys., amici curiæ.

LAND, J.  This is a summary proceeding by rules to collect additional licenses, with penalties, for the last five years from the defendant, for "conducting the business of a drinking saloon or barroom."  It is alleged that the affidavits made by defendant in order to obtain licenses for each of said years are incorrect, and that the gross sales from said business exceeded $20,000 annually during said period.  Wherefore the tax collector prayed that the defendant be condemned to pay an additional license of $400 for each of said years, with the statutory penalty of 2 per cent. per month thereon, and 10 per cent. attorney fees.

At the same time, the tax collector ruled the defendant to show cause why it should not be condemned to pay licenses for the same five years for the business of retailing cigars, for the business of pool and billiards, for the business of retailing cards, and for the business of operating a restaurant.

The defendant for answer, after pleading the general issue, averred that it was incorporated under the laws of the state for the formation of corporations for scientific and literary purposes, and is engaged in. social, scientific, and literary pursuits, and is no way engaged in business within the meaning and intent of the revenue laws of this state. The defendant specially denied that in the sales of its goods made exclusively to its members any profit is contemplated, and further specially denied its liability for the licenses claimed in the second rule.

The rules were consolidated and tried together, and both were dismissed.  The plaintiff in rule has appealed.  The second rule was virtually abandoned on the trial below, and need not be further considered.

During the five years in question, the defendant annually paid a state license of $200 for carrying on a bar for the use of its members, based on the affidavit of its president that the gross annual receipts, liable to a license tax, were more than $5,000 and less than $7,500.  The secretary's reports of the club's affairs for each of said years show an item of "bar receipts" exceeding $20,000 in amount, but it is admitted that said item includes not only the sale of alcoholic, malt, and vinous liquors, but all other articles sold by the chess club over its bar or from the bar.

The testimony of several witnesses conversant with the business of the club shows that the gross sales of intoxicating liquors during the five years in question were less than $7,500 per annum.  The testimony also shows that the balance of the "bar receipts" consisted of sales of lemonade, milk, mineral waters, and other refreshments at the bar or from the bar, to members of the club.

The contention of the state is that all the sales made at or from the bar should have been returned and considered in fixing the amount of the license for each year.

The contention of the club is that, under the doctrine announced by this court in the case of State v. Boston Club and Pickwick Club, 45 La. Ann. 585, 12 South. 895, 20 L. R. A. 185, the amount of the annual licenses was properly based on the gross sales of intoxicating liquors.  This contention was sustained by the judge a quo for the reasons stated in his written opinion.

It seems to us that the first question to be considered is as to the legal right of the tax collector to demand the additional licenses sued for in this case.  The evidence shows that the tax collector accepted the sworn statements of the president of the club as correct and satisfactory, and without objection issued the licenses for the years 1901, 1902, 1903, 1904, and 1905.  No proceedings were had to traverse such sworn statements

until July 27, 1905, more than four years after the first license had issued. We have been referred to no provision of the general license law of this state which authorizes the tax collector to demand additional license taxes for back years. Section 19, p. 417, of Act No. 171 of 1898 refers to licenses for the current year; and, after providing that the basis of license shall be determined by sworn statements of business done in the previous years, further provides "that, if the tax collector be not satisfied with the said sworn statement, he shall traverse the same by a rule taken in proper court; rule shall be tried summarily; whether an answer be thereto filed or not"; and "also that the license shall issue in accordance with the said sworn statement, notwithstanding the prospect or pendency of the rule, and the final ratification (rectification?) shall be made as ordered by the court."

If the tax collector be satisfied with the sworn statement, there the matter ends. If he be not satisfied, then it becomes his duty to proceed promptly by rule to traverse the sworn statement. While the section does not specify the delay within which the rule shall be filed, it contemplates prompt action, a speedy trial, and an early decision of the issue. As all license taxes become delinquent on the 2d day of March of each year, and on such date the tax collector is required to turn over to the attorney appointed to aid him a complete list of all delinquent license payers, it is fair to presume that the statute intended that the tax collector should file his rule and give the court an opportunity to pass on the correctness of the sworn statement before the license taxes become delinquent.

Justice to the state in the prompt collection of her revenues, and to the citizen in the conduct of his business, demands that questions affecting the basis of assessment should be determined without delay and in a summary manner. In the case at bar the sworn returns made by the president of the club for each of the five years were accepted as correct by the tax collectors for the state and the city of New Orleans, and license taxes based thereon have been regularly paid, and the business of the club has been conducted under annual licenses issued by the proper authorities. It is too late to raise the question of the correctness of the sworn statements on which the license taxes were based. A license is a permit to do business paid for in advance, and, in the nature of things, all questions pertaining to its issuance should be determined before the privilege is exercised and as early in the current tax year as is practicable. Like an assessment, a license apportionment once made and returned cannot be changed without express legislative authority.

We also concur in the opinion of the trial judge that, as decided in the Boston and Pickwick Club Cases, 45 La. Ann. 586, 12 South. 895, 20 L. R. A. 185, the conducting of a social club is not the carrying on of a business, trade, or occupation in the sense of the license statutes of this state. It follows that the defendant has not been "conducting the business of a drinking saloon or barroom," as alleged in the rule. In the case cited supra, the court so held as to other social clubs conducted on the same lines, and defendants therein were not adjudged liable to a license tax for carrying on such a business, but for conducting "an establishment selling or giving away or otherwise disposing of intoxicating liquors." Therefore, if the defendant club is taxable for license purposes only quoad the gross sales of such liquors, the sales of other articles cannot be considered in determining the basis of license taxation.

For the reasons assigned, the judgments appealed from are affirmed.