928 P.2d 666

**STATE of Arizona, ex rel. ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellee,**

v.

**PHOENIX LODGE NO. 708, LOYAL ORDER OF MOOSE, INC., Defendant–Appellant.**

No. 1 CA–TX 94–0022.

Court of Appeals of Arizona, Division 1, Department T.

May 16, 1996.

Review Denied Dec. 17, 1996.

tion privilege tax on the receipts from its private dining room and lounge. We hold that it must.

The Phoenix Lodge No. 708 of the Loyal Order of Moose is a nonprofit Arizona corporation that is part of a fraternal benefit society, the Loyal Order of Moose, Inc. The Lodge derives its income from bingo receipts, membership dues, lounge sales, dining room sales and various fund-raising activities. Each of the Lodge's 2,700 members pays $35 annual dues. Members of the women's auxiliary pay $10 annual dues.

The Lodge provides charitable aid to its members, their dependents, and community organizations. Through the Loyal Order of Moose, the Lodge also contributes support toward the operation of a home in Florida for elderly members and their spouses, and a home in Illinois for members and their wives and children. All the Lodge's income, less the costs of operating the Lodge itself, is devoted to these purposes.

The Lodge does not advertise for members. To become a member, a person must be sponsored by an existing member of the Lodge. A prospective member is allowed only one visit to the Lodge's private social quarters.

The Lodge operates a lodge hall in Phoenix. The hall contains a large meeting room in which the Lodge holds public bingo games which it advertises to the public. The Lodge operates a snack bar to serve bingo players. It pays state transaction privilege taxes on the proceeds of its snack bar food and beverage sales to members and nonmembers alike.

The hall also has a dining room which serves food and beverages and a lounge which serves alcoholic beverages and snacks. The dining room and lounge are not open to the public. Historically, the dining room loses money. The lounge normally generates a profit. Revenues from the dining room and lounge go into a fund administered by the Lodge's House Committee. Any revenues in excess of expenses are transferred to the Lodge's general fund.

During the period for which the tax is sought, the dining room was closed Tuesdays

Grant Woods, Attorney General by Michelle M. White and Michael Worley, Assistant Attorneys General, Phoenix, for Appellee.

Newmark Irvine, P.A. by Stephen C. Newmark, Phoenix, for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

This case presents the question of whether a fraternal organization must pay a transac-

and Thursdays, and during the remainder of each week was open two to three hours in the late afternoon and early evening. In the summer, the lounge was open seven days a week from 9:00 a.m. or 10:00 a.m. to midnight or 1:00 a.m. depending on the particular day. The Lodge uses both volunteers and paid full-time and part-time workers in operating the dining room and lounge.

The dining room and lounge are adjacent to each other. The dining room has a capacity of 140. It has tables, a hostess/cashier station and a busboy station. The dining room provides full sit-down dining service, with menus, tablecloths, napkins, china, flatware, and guest checks. Food for the dining room is bought mainly from local vendors. The kitchen is equipped with commercial restaurant equipment. The dining room can be opened into the lounge area.

The lounge has a full bar with bar stool seating for about twenty-five, tables and chairs for about sixty-five, a dance floor, periodic live entertainment, three pool tables, a shuffle board, video games and a card room. It has a state liquor license, and, along with the dining room, is inspected by the county health inspector.

A key-card lock system physically limits access to the Lodge hall's social quarters, which comprise all areas of the hall except the meeting room used for bingo and its associated snack bar. Only Lodge members or members of the women's auxiliary are permitted to pay for food or drink in the dining room or lounge. Signs to this effect are posted throughout the lodge hall.

The primary purpose of the dining room and lounge is to provide a social gathering place for members and their guests. The Lodge hall's social quarters are not used by members for conducting business or entertaining clients. There are no substantial business benefits to be gained or intended to be gained from membership in the Lodge.

The Department of Revenue issued a deficiency assessment against the Lodge for a forty-six-month period ending in December 1988, which included transaction privilege taxes on its income from operating the dining room and lounge. The assessment was up-held through the Department's administrative review process and the Lodge appealed to the State Board of Tax Appeals, Division Two, which held that the dining room and lounge income was not subject to tax. The Department appealed to the tax court, which reversed the Board and held that the Lodge owed the tax.

## THE LODGE IS ENGAGED IN BUSINESS

█ Arizona Revised Statutes Annotated ("A.R.S.") section 42–1306(A) levies "privilege taxes measured by the amount or volume of business transacted by persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales or gross income, as the case may be, as prescribed by this article." The tax rate for the restaurant classification is 5% of the tax base. A.R.S. § 42–1317(A)(1)(k).

Arizona Revised Statutes section 42–1301(1) defines "business" as including "all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage, either directly or indirectly, but not casual activities or sales."

The Lodge contends its activities in operating the private dining room and lounge do not constitute engaging in "business." The Lodge states:

This Court has observed, "In construing the intent of the privilege tax, 'business' is to be given its ordinary definition." *Arizona State Tax Comm'n v. First Bank Building Corp.*, 5 Ariz.App. 594, 429 P.2d 481 (App.1967).

On the strength of this quotation, the Lodge urges us to accept a dictionary definition of "business" as "usual commercial or mercantile activity engaged in as a means of livelihood." It argues that this does not describe the "purely private activities of the Lodge...."

We have read *First Bank Bldg. Corp.* and do not find the words in the direct quote the Lodge presents to us. We find instead:

When words are defined by statute the Court is bound by the legislative definition

in all cases where the rights of the parties are based upon the statute. *County of Pima v. School District No. One,* 78 Ariz. 250, 278 P.2d 430 (1954).

5 Ariz.App. at 600, 429 P.2d at 487. The court then set forth the same statutory definition of "business" that we have quoted above. We see no occasion to resort to any dictionary definition of that term.

The Lodge next notes that the statutory definition of "business" was first adopted by the Revenue Excise Act, 1935 Ariz. Sess. Laws Ch. 77. It asserts that the Compiler's Note to the section containing that definition in the 1935 Arizona Code Annotated (ACA) states that the Act "was derived from" the laws of thirteen states including Louisiana. It then observes that *State v. New Orleans Chess, Checkers and Whist Club,* 116 La. 46, 40 So. 526, 528 (1906), held that "the conducting of a social club is not the carrying on of a business, trade or occupation in the sense of the license statutes of this state." Citing *In re McConnell's Estate,* 101 Ariz. 538, 543, 421 P.2d 895, 900 (1966), the Lodge argues that the Arizona legislature is therefore presumed to have adopted that construction from Louisiana when it first defined "business" in 1935.

The Lodge's chain of reasoning contains several weak links. First, the Compiler's Note to A.C.A. section 73–1302 does not state that Arizona's 1935 definition of "business" was derived from the statutes of thirteen other states. It merely lists those states' statutes as "Comparative Legislation." It says nothing about what that may mean. In addition, the Lodge makes no effort to present the text or code number of any Louisiana legislation in effect in 1906 from which Arizona assertedly adopted its definition of "business." In fact, *State v. New Orleans Chess, Checkers and Whist Club* makes no reference to any statutory or other definition of that term. The Lodge's argument fails to give rise to the presumption referred to in *In re McConnell's Estate.*

The Lodge next observes that the tax court concluded it was engaged in "business" because its members derive "gain, benefit or advantage," in the form of social and other activities, from the operation of the dining room and lounge. *See* A.R.S. § 42–1301(1),

defining "business," quoted above. It argues this was error, because "mere social interaction is far removed from the notion of business as a commercial enterprise."

Arizona case law does not support this argument. As we have already stated, we are not bound to interpret "business" as referred to in A.R.S. section 42–1301 *et seq.* as necessarily including an element of commercial enterprise. The definition of that term in A.R.S. section 42–1301(1) is much broader than that. Several cases prove our point.

In *Tempe Life Care Village, Inc. v. City of Tempe,* 148 Ariz. 264, 714 P.2d 434 (App. 1985), the taxpayer was a nonprofit lifetime residential and health care facility for the elderly. Like the Lodge, it was federally tax exempt under section 501(c)(3) of the Internal Revenue Code of 1954. The taxpayer paid all its individual residents' costs of living from an income pool that it maintained through residents' initial endowments and continuing monthly fees.

The City of Tempe sought to impose its transaction privilege tax on the taxpayer based on those portions of its receipts attributable to real property rental, transportation for hire, and food service. The trial court granted summary judgment for the taxpayer, ruling that the taxpayers' activities did not constitute engaging in "business" within the meaning of Tempe City Code section 33–11(3), which was virtually identical to A.R.S. section 42–1301(1).

The city appealed, and the taxpayer argued that Tempe had "failed to show any way in which [the taxpayer] acts for its own gain, benefit, or advantage and that Tempe even concedes that the activities of [the taxpayer] are calculated to benefit its members, the senior citizens, rather than the entity itself." 148 Ariz. at 267, 714 P.2d at 437. We pointed out, however, that our supreme court had held in *O'Neil v. United Producers & Consumers Cooperative,* 57 Ariz. 295, 113 P.2d 645 (1941), that any activities a nonprofit corporation carries on which afford "gain, benefit or advantage" to its members constitute "business." *Tempe Life Care Village,* 148 Ariz. at 268, 714 P.2d at 438. We added:

Clearly the activities of [the taxpayer] benefit its members in providing collectively for their needs of living more efficiently than each individual could do on his own. So, too, the members benefit from having the many chores of daily life performed for them and from having all worry taken away that they will ever be unprovided for in their old age. **While some of these benefits may not be monetary, it has repeatedly been pointed out by other courts interpreting similar statutes that "gain," "benefit" and "advantage" convey a meaning wider in scope than the word "profit."** *See, e.g., City of Seattle v. State,* 59 Wash.2d 150, 367 P.2d 123 (1961); *Union League Club v. Johnson,* 18 Cal.2d 275, 115 P.2d 425 (1941).

*Tempe Life Care Village,* 148 Ariz. at 268, 714 P.2d at 438 (emphasis added). Contrary to the Lodge's argument, the benefits to the members of the Tempe Life Care Village were not exclusively "in the form of commercial personal care services."

*Union League Club v. Johnson,* which we cited with approval in *Tempe Life Care Village,* is even closer to this case on its facts. There the State of California sought to impose retail sales taxes on a private, nonprofit social and political club's proceeds from sales of food and drink to its members. The applicable statute defined "business" as "any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect." *Johnson,* 115 P.2d at 426. In response to the state's appeal from a superior court judgment refunding the sums assessed to the club, the club argued

that the statute applies only to those engaged in 'business' for profit because the taxable activity was required to be 'with the object of gain, benefit or advantage, either direct or indirect.' As its purpose is not to make a profit but to serve its members, it argues, the judgment should be affirmed.

*Id.* at 426. The court disagreed, stating:

It is significant that the statute does not include the word 'profit' in its definitions but imposed a tax upon the transactions of one conducting business 'with the object of gain, benefit or advantage, either direct or indirect.' Assuming that no profit was either intended or realized by the club from the operations of its dining rooms and bar, it does not follow that there was no 'gain, benefit or advantage.' Few persons would go to a club without these facilities and they undoubtedly largely contribute to the success of such an enterprise. In construing a statute using the identical language of our own, the supreme court of Ohio aptly remarked: " 'Profit' may be said to be 'gain, benefit, or advantage,' but 'gain, benefit, or advantage,' does not necessarily mean only 'profit.' " *State v. Zellner,* 133 Ohio St. 263, 13 N.E.2d 235, 238[ ].

*Johnson,* 115 P.2d at 426; *see also Green v. Surf Club, Inc.,* 136 So.2d 354 (Fla.App.1961) (under statutory definition similar to A.R.S. § 42–1301(1), nonprofit social organization held in "business" of selling food and beverages to its members). *But cf. Svithiod Singing Club v. McKibbin,* 381 Ill. 194, 44 N.E.2d 904 (1942) (in absence of statutory definition, dictionary definition of "business" as "any particular occupation or employment, habitually engaged in, especially for livelihood or gain" held applicable, and private nonprofit club held not subject to retail sales tax on sales of food and drink to members).

The reasoning of *Union League Club v. Johnson* and *Tempe Life Care Village v. City of Tempe* applies here. The availability of the dining room and lounge naturally tends to make the Lodge more desirable to its members, and hence contributes toward maintaining the Lodge's membership base. The net proceeds of the dining room and lounge help keep the Lodge hall in operation, which in turn provides a place of entertainment, socialization, and community service for the Lodge members. The net proceeds also form a part of the members' collective contributions to fraternal benefit charities that support fellow members and their families and that may be available in the future for the use of the contributing members or their families themselves.

The combined operation of the dining room and lounge yields "gain, benefit or advantage" to the Lodge's members. The tax

court did not err in determining that operating the dining room and lounge constituted engaging in "business" within A.R.S. section 42–1301(1).

## THE RESTAURANT CLASSIFICATION APPLIES

■ Arizona Revised Statutes section 42–1310.14 provides in part:

A. The restaurant classification is comprised of the business of operating restaurants, dining cars, dining rooms, lunchrooms, lunch stands, soda fountains, catering services or similar establishments where articles of food or drink are sold for consumption on or off the premises.

B. The tax base for the restaurant classification is the gross proceeds of sales or gross income derived from the business. The gross proceeds of sales or gross income derived from the following shall be deducted from the tax base....

The Lodge also argues that its gross proceeds from the dining room and lounge are not subject to taxation under the "restaurant" classification because it is not in the business of "operating restaurants, dining cars, dining rooms, lunchrooms, lunch stands, soda fountains, catering services or similar establishments where articles of food or drink are sold for consumption on or off the premises." A.R.S. § 42–1310.14(A). It observes that "restaurant" is not defined in the statute, and that it must therefore be given its ordinary meaning. *McIntyre v. Mohave County*, 127 Ariz. 317, 620 P.2d 696 (1980). The Lodge further notes that WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (G. & C. Merriam Co. 1964), defines "restaurant" as "an establishment where refreshments or meals may be procured by the public: a public eating house," and cites numerous cases from other jurisdictions that have followed this or similar definitions. Because it is undisputed that the Lodge's dining room and lounge are not open to the public, the Lodge argues that the restaurant classification does not apply.

■ Ambiguities in tax statutes are to be interpreted in favor of the taxpayer, and words in such statutes should not be strained for the sake of imposing a tax. *Wilderness World, Inc. v. Department of Revenue*, 182 Ariz. 196, 199, 895 P.2d 108, 111 (1995). This does not mean, however, that we should give the words of the statute a constricted or unnatural meaning. We give the language its "full meaning." *Svithiod Singing Club*, 44 N.E.2d at 908. We construe the statute as a whole, and consider its context, language, subject matter, historical background, effects and consequences, and its spirit and purpose. *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991); *Gortarez ex rel. Gortarez v. Smitty's Super Valu, Inc.*, 140 Ariz. 97, 103, 680 P.2d 807, 813 (1984).

The Lodge's analysis of A.R.S. section 42–1310.14(A) focuses entirely on the term "restaurant." It gives no consideration at all to the series of words of which "restaurant" is merely the first. If it is true that a "restaurant" is open to the public, the same cannot be said for every "dining room" or "lunch room" or "similar establishment." If the taxpayer were correct, a country club could not be taxed on its sales of food under this provision, nor could an employer which maintains a cafeteria for the exclusive use of its employees. The Lodge's dining room and lounge may not be identical to a public restaurant, but they are certainly similar to other places listed in section 42–1310.14(A) that serve food and which may or may not be open to the public. We find it hard to conceive that the legislature intended that such enterprises not be taxed. The tax court correctly found that the Lodge's gross income from the lounge and dining room was taxable under the restaurant classification.

## THE LODGE IS NOT ENTITLED TO A DEDUCTION UNDER A.R.S. SECTION 42–1310.14(B)(3)

■ The Lodge contends its gross income from the dining room and lounge was deductible from its overall gross income or gross proceeds from sales under A.R.S. section 42–1310.14(B)(3), which provides in part:

The gross proceeds of sales or gross income derived from the following shall be deducted from the tax base:

....

3. Sales by churches, fraternal benefit societies and other nonprofit organizations, as these organizations are defined in the federal internal revenue code (26 United States Code § 501), which do not regularly engage or continue in the restaurant business for the purpose of fund raising.

The Lodge interprets this provision to allow a deduction of the proceeds of *all* sales by any nonprofit organization that does not raise funds by regularly engaging in the restaurant business. The Department and the tax court interpret the exclusion to apply only to the proceeds of *fund-raising* sales conducted by nonprofit organizations that do not regularly engage in the restaurant business.

■ The Lodge argues that the Department's interpretation of section 42–1310.14(B)(3) is "bizarre" and "distorts" its language. We disagree. Legislation is not always expressed with perfect clarity. The goal of statutory construction is to give statutes the meaning the legislature intended and strict rules of grammar will be ignored where they are inconsistent with the statute's general meaning and object. *Jones v. Santa Cruz County,* 72 Ariz. 374, 377, 236 P.2d 361, 364 (1951); *State ex rel. Sullivan v. Burns,* 51 Ariz. 384, 392, 77 P.2d 215, 218 (1938).

Two things indicate what the legislature intended by this statute. First, during a hearing before the House Ways and Means Committee on February 11, 1986, the prime sponsor of the bill that first enacted the language now codified as A.R.S. section 42–1310.14(B)(3) stated:

[T]his bill will provide a transaction privilege tax exemption for sales of food or drink by churches, fraternal benefit societies and other nonprofit organizations, **if such sales are for fundraising purposes** and **the organization does not regularly engage in the restaurant business.**

Remarks of Rep. Meredith concerning HB 2313, Minutes of House Ways and Means Committee Meeting of February 11, 1986, Second Regular Session, Thirty–Seventh Legislature (emphasis added).[1] This legislative history clearly and directly supports the Department's and the tax court's interpretation of the deduction in question.

Equally important, the Department's interpretation embodies a recognizable legislative policy goal, while the Lodge's does not. As interpreted by the Department, section 42–1310.14(B)(3) would encourage fund raising by 501(c)(3) nonprofit organizations which plan and hold food or beverage sales from time to time as their need for funds dictates, but do not do so on any regular basis. As interpreted by the Lodge, however, section 42–1310.14(B)(3) would insulate from taxation *all* sales by any nonprofit organization that would otherwise be taxable under the restaurant classification as long as the organization raised funds only through activities other than those that would constitute regularly engaging in the restaurant business.

As interpreted by the Lodge the statute would apply to the proceeds of all the same fund raising sales that would be excludable under the Department's interpretation. But it would also allow the exclusion of all proceeds from any regular full-scale restaurant business operated by a nonprofit organization, provided the organization took care to funnel the restaurant's proceeds toward a pursuit outside the organization's operating expenses or charitable purposes—like private recreation or leisure activities for its officers or members—and to raise funds for its continued operation and charitable works through some other means. We cannot conceive that the legislature intended anything like that.

The Lodge contends that the Department's interpretation likewise makes no sense. It states: "If an entity does not regularly engage in the restaurant business, its activities

---

1. The quoted Minutes were first brought to our attention as Appendix E to the Department's Answering Brief. Citing *O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 169, 613 P.2d 629, 631 (App.1980), the Lodge tells us we must disregard them because they were not part of the record before the tax court. We disagree. To the extent

*O'Malley Lumber Co.* stood for the proposition that an appellate court cannot refer to official legislative materials in interpreting the law unless the trial court also saw them, it has been expressly disapproved. *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 269 n. 5, 872 P.2d 668, 673 n. 5 (1994).

are 'casual' and, hence, its proceeds are not subject to tax. A.R.S. § 42–1301.1; *State v. Selby*, 25 Ariz.App. 500, 544 P.2d 717 (App. 1976). It follows that, if the entity is not engaged in business, there is no need to reach the question of exemption." The Lodge argues in effect that as interpreted by the Department, section 42–1310.14(B)(3) would only allow the deduction of gross proceeds that are not subject to the transaction privilege tax to begin with. We do not agree.

*Trico Elec. Co-op. v. State Tax Comm'n*, 79 Ariz. 293, 288 P.2d 782, defines "casual" as follows:

> Casual means "a happening without design and without being expected; coming without regularity; occasional." Webster's International Dictionary, second edition. It carries the idea of lack of continuity.

*Id.* at 296, 288 P.2d at 785. Contrary to the Lodge's argument, a nonprofit organization that serves and sells food or drink, but not "regularly," does not *ipso facto* make merely "casual" sales. If that were the case, the word "regularly" in section 42–1310.14(B)(3) would be surplusage, because "engaging" in a taxable business is sufficient by itself to subject the actor to taxation. *See* A.R.S. §§ 42–1301(1), 42–1310.14(A). For instance, a nonprofit organization might choose to set up and run a portable food and drink sales operation as frequently as it perceives the need to earn additional funds and is presented with opportunities to do so, like street fairs or other public gatherings. If it did so for very many days at a time, one would have to say it was then engaging in a business covered by the restaurant classification and not merely casual activity. At the same time, however, given its erratic, opportunistic forays into that enterprise, one could not say that it engaged in it "regularly." It is that kind of organized but variable business activity that the legislature likely intended to exempt under A.R.S. section 42–1310.14(B)(3). The tax court did not err in holding that the deduction provided by section 42–1310.14(B)(3) was unavailable to the Lodge for its gross income from operating the dining room and lounge.

The judgment is affirmed. The tax court's opinion, reported at 178 Ariz. 275, 872 P.2d 679, is approved as supplemented in this opinion.

LANKFORD, P.J., and SULT, J., concur.