993 P.2d 1051

**ESTANCIA DEVELOPMENT ASSOCIATES, L.L.C., Plaintiff–Appellant,**

v.

**CITY OF SCOTTSDALE, Defendant–Appellee.**

**No. 1 CA–TX 98–0006.**

Court of Appeals of Arizona, Division 1, Department T.

March 23, 1999.

Review Denied Nov. 30, 1999.

for the probation officer.

Fennemore Craig, P.C. by Paul J. Mooney, William S. Gates, David T. Cox, John D. Everroad, Phoenix, Attorneys for Appellant.

Scottsdale City Attorney's Office by Amy L. Lieberman, Asst. City Attorney, Jenae R. Naumann, Asst. City Attorney, Scottsdale, Attorneys for Appellee.

## OPINION

LANKFORD, Judge.

¶ 1 We hold in this appeal that the Model Tax Code, adopted as part of the Scottsdale Revised Code, does not tax sales of real property that is unimproved at the time of its sale. Accordingly, we reverse summary judgment entered by the Tax Court against Estancia Development Associates, L.L.C. ("Estancia") and for the City of Scottsdale on Estancia's claim for a refund of speculative builder taxes and penalties. The appeal presents these issues:

1. Did the Tax Court err in sustaining the application of the City's speculative builder tax to sales of unimproved real property?

2. Assuming a negative answer to the first issue, did the Tax Court err in sustaining the assessment of administrative penalties against Estancia?

Because we hold that the Tax Court erred in sustaining the tax, we need not reach the second issue.

¶ 2 Estancia owned real property in Scottsdale, Arizona. During the audit period, from June 1992 through May 1996, it entered into contracts to sell the individual lots into which the Scottsdale property had been subdivided.

¶ 3 Under the contract, the purchaser agreed to buy the property and Estancia agreed to set up an escrow for the transaction. The close of escrow was to take place on a specified date or "on such earlier or later date as the parties shall agree." By signing the purchase contract, the buyer acknowledged having received "[a] copy of the applicable Final Subdivision Public Report of the Arizona Department of Real Estate" and having had an adequate opportunity to read and understand it.

¶ 4 Estancia's contract promised to make improvements to the property as follows:

10. **Improvements:** Seller agrees to have completed the paved roads, sewers, water, telephone, cable television, natural gas and electric service to the Property by the date set forth in the Public Report.

. . . .

20. **Home Construction:** Buyer acknowledges that Buyer is purchasing the Property as vacant land. Buyer further acknowledges that all improvements including, without limitation, any residence, building or other structure erected on the Property and the grading, landscaping and other improvements thereon may only be undertaken or constructed after specific approval thereof by the Design Review Committee in accordance with the provisions of the Declaration and the Design Guidelines for Estancia, and all amendments and supplements thereto, and by the City of Scottsdale.

¶ 5 As of the close of escrow no structure had been erected on any parcel that Estancia sold. It is not disputed that Estancia later completed the off-site improvements contemplated by the purchase contract.

¶ 6 The City audited Estancia's business records for the period between June 1992 and May 1996. The City assessed a specula-

tive builder tax deficiency against Estancia comprising $363,029.25 in taxes, $115,079.83 in penalties, and $15,846.33 in interest through June 1996. Estancia made a partial payment against the assessed taxes and sought a refund through the City's administrative process. After exhausting its administrative remedies on both the tax and penalty assessments, Estancia brought this refund action in the tax court under authority of Scottsdale Revenue Code ("S.R.C.") section 575. The tax is imposed by the S.R.C., which adopted the Model City Tax Code drafted by the Arizona League of Cities and Towns. *See* S.R.C., Privilege and Excise Taxes, Articles 1, 2, 4, 5; *see also generally* Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 42–1451 through 42–1456 (1991 & Supp.1997) (modified, expanded, and renumbered as A.R.S. §§ 42–6001 through 42–6055 effective January 1, 1999 (1998 Special Pamphlet to 13 A.R.S.)). Section 416(a) of the S.R.C. imposes a 1.4% excise on "the gross income from the business activity upon every person engaging or continuing in business as a speculative builder within the city." Section 416(a)(1) includes in the taxable gross income of a speculative builder "the total selling price from the sale of improved real property at the time of closing of escrow or transfer of title."[1] Section 416(a)(2) defines "improved real property" as any real property:

(A) [U]pon which a structure has been constructed; or

(B) [W]here improvements have been made to land containing no structure (such as paving or landscaping); or

(C) [W]hich has been reconstructed as provided by regulation; or

(D) [W]here water, power, and streets have been constructed to the property line.

Subsection (a)(3) provides in part:

*"Sale of Improved Real Property"* includes any form of transaction, whether characterized as a lease or otherwise, which in substance is a transfer of title of, or equitable ownership in, improved real property....

¶ 7 On cross-motions for summary judgment, the tax court sustained the City's tax and penalty assessments against Estancia. The Court reasoned:

While this court agrees that Plaintiff did not sell improved real property, it certainly contracted to sell improved property, again, as evidenced by the purchase contracts it entered into with each purchaser. Regardless of whether the improvements were completed at the time escrow closed on the lots, Plaintiff nevertheless contracted to sell improved real property. Therefore, Plaintiff engaged in a taxable activity and is not entitled to a refund for taxes paid on the sale of lots during the period of June 1992 to May 1996.

¶ 8 From a final judgment entered in accordance with the tax court's ruling, Estancia brought this timely appeal. We have appellate jurisdiction. *See* A.R.S. § 12–2101(B) (1994).

¶ 9 For the purpose of our analysis, we will assume without deciding that as of the close of escrow on each sale that Estancia made during the audit period, Estancia had constructed no improvements to the conveyed parcel within the definition of "Improved Real Property" in S.R.C. section 416(a)(2).[2]

¶ 10 According to A.R.S. section 1–213 (1995) non-technical words and phrases in legislative enactments must be construed "according to the common and approved use of the language," unless they have acquired a "peculiar and appropriate meaning in the law...." We must "liberally construe[ ]" statutes "to effect their objects and to promote justice." A.R.S. § 1–211(B) (1995). The court's goal in interpreting any statute is to determine and give effect to the legislative

---

1. Section 416(b)(2) provides: "Neither the cost nor the fair market value of the land which constitutes part of the improved real property sold may be excluded or deducted from gross income subject to the tax imposed by this action." Section 416(c) provides that a speculative builder's tax liability arises "at close of escrow or transfer of title, whichever occurs earlier...."

2. In doing so we recognize that the record reflects neither agreement between the parties on this proposition nor any judicial resolution of its correctness.

intent that brought it into being. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *Mail Boxes, Etc. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995); *Devenir Associates v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991).

¶ 11 Although the statute's language is the best and most reliable index of the statute's meaning and must be consulted first, see *Calmat of Arizona v. State ex rel. Miller*, 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993), and *State v. Jones*, 188 Ariz. 388, 392, 937 P.2d 310, 314 (1997), uncertainty about the meaning or interpretation of the statute's terms requires the appellate court to apply methods of statutory interpretation that go beyond the statute's literal language. *See State ex rel. Arizona Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.*, 187 Ariz. 242, 247, 928 P.2d 666, 671 (App.1996). These methods include consideration of the statute's context, language, subject matter, historical background, effects and consequences, and spirit and purpose. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). Another principle of interpretation favors the taxpayer when the legislative enactment is ambiguous:

> Ambiguities in tax statutes are to be interpreted in favor of the taxpayer, and words in such statutes should not be strained for the sake of imposing a tax. This does not mean, however, that we should give the words of the statute a constricted or unnatural meaning.

*Phoenix Lodge No. 708*, 187 Ariz. at 247, 928 P.2d at 671 (citation omitted).

¶ 12 Estancia first argues that it never engaged in business as a "speculative builder" or as an "owner-builder" with respect to any of the parcels it sold in the Estancia development. Because we hold that Estancia's sales were not subject to the tax for another reason, we need not decide this issue.

¶ 13 This appeal is resolved by the plain language of the S.R.C. The scope of the

tax is defined by S.R.C. section 416(a). That section imposes the tax on "gross income," and then defines that term:

> The gross income of a speculative builder considered taxable shall include the total selling price from the sale of improved real property at the time of closing of escrow or transfer of title.

S.R.C. § 416(a)(1).

¶ 14 Another provision, S.R.C. section 416(a)(2), defines "improved real property." Our quotation highlights the language we find most revealing:

> "Improved real property" means any real property:
>
> (A) Upon which a structure *has been constructed;* or
>
> (B) Where improvements *have been made* to land containing no such structure (such as paving or landscaping); or
>
> . . . .
>
> (D) Where water, power, and streets *have been constructed* to the property line.

(Emphasis added).

¶ 15 In each description of the improvements, the past perfect tense is used. No provision is made for taxation of vacant land on which improvements are yet to be constructed. Thus, the S.R.C. does not tax the price of vacant land on which improvements were promised to be made but as of the time of sale have not been made.[3]

¶ 16 We are aware that Estancia is unable to point to a policy reason for allowing transactions in which the improvements are deferred to escape the tax otherwise imposed. Nor are we able to discern one. However, it is enough that the S.R.C.'s plain language does not extend the tax to such transactions. Our duty is to apply the S.R.C. as written, not to judge whether the drafters' decision was wise.

¶ 17 For these reasons, we reverse the judgment and remand this case to the Tax Court for further proceedings consistent with this opinion.

---

**3.** The taxpayer conceded at oral argument, however, that if *any* improvements had been made, the entire price of all improvements, including uncompleted ones, could be subject to the tax.

CONCURRING: CECIL B. PATTERSON, Jr., Judge, and PHILIP E. TOCI, Judge.