NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF TUCSON, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

ORBITZ WORLDWIDE, INC., et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-TX 23-0001
FILED 01-11-2024

Appeal from the Arizona Tax Court
No. TX2014-000470
TX2014-000471
TX2014-000472
TX2014-000473
TX2014-000474
TX2014-000475

The Honorable M. Scott McCoy, Judge

**VACATED AND REMANDED**

COUNSEL

Snell & Wilmer L.L.P., Phoenix
By Barbara J. Dawson, Ed Hermes, Marsha Cotton
*Counsel for Defendants/Appellants/Cross-Appellees*

Morgan, Lewis & Bockius LLP, Chicago
By Elizabeth B. Herrington, Thomas M. Peterson
*Counsel for Defendants/Appellants/Cross-Appellees*

Wright Welker Pauole PLC, Phoenix
By Scott G. Andersen
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Crongeyer Law Firm, PC, Atlanta
By John Crongeyer
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Bird Law Group, Atlanta
By Alexandria Seay
*Counsel for Plaintiff/Appellee/Cross-Appellant*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge James B. Morse Jr., and Judge Cynthia J. Bailey joined.

---

**F U R U Y A**, Judge:

¶1        Expedia, Inc., Hotels.com L.P., Hotwire, Inc., Orbitz, LLC, Trip Network, Inc., and Internetwork Publishing Corp. (collectively, "Expedia") appeal the superior court's decision awarding the city of Tucson more than $400,000 in taxes, interest, and penalties. For the following reasons, we vacate this award and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        This case is related to 2015 litigation between several Arizona cities ("the Cities"), including Tucson, and several online travel companies ("OTCs"), including Expedia. *See City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 237–38 ¶¶ 6–9 (2019).

¶3        The OTCs operate websites where travelers can book hotel rooms. *Id.* at 237 ¶ 2. When travelers book through the OTCs' websites, they receive a total price consisting of the room rate set by the hotel, taxes, and fees. *Id.* at 237 ¶ 3. The total price includes a markup for the OTCs' services. *Id.*

## I.     Audit and Assessment

**¶4**          As early as 2003, the Cities, acting collectively through a Unified Audit Committee ("the Committee"), began investigating whether OTCs were taxable as "brokers" under §§ 444 and 447 of the Model City Tax Code ("MCTC"). Each city had adopted provisions based on the MCTC. *See id.* at 236 ¶ 1 n.2.

**¶5**          Section 444 of the MCTC taxes "the gross income from the business activity upon every person engaging or continuing in the business of operating a hotel[,]" whereas § 447 taxes "the gross income from the business activity of any hotel." The MCTC also defines "person" to include "broker[s]." MCTC § 100.

**¶6**          In 2007, the Cities sent letters to the OTCs announcing they must "pay privilege tax, and if applicable, transient occupancy tax on business activity in each Arizona city where their principals are located" if the OTCs receive "all or part of the gross income from a taxable activity for their principal." The letter directed the OTCs to contact individual cities "[f]or further information regarding the privilege tax and, if applicable, transient occupancy tax[.]" Expedia paid no tax at that time.

**¶7**          In 2013, Tucson assessed Expedia for taxes under Tucson City Code ("TCC") §§ 19-66 and -444. Tucson's § 19-444 is a verbatim copy of the MCTC § 444 but sets the tax rate at zero percent. However, TCC § 19-66(a) states:

> Every person who operates or causes to be operated a hotel . . . within the city is subject to and shall pay an occupational license tax in an amount equal to six (6) percent of the rent charged by the operator to a transient. The transient rental occupational license tax imposed on the class of lodging house and recreational vehicle park operators serving transients . . . is not on the privilege of doing business within the city, but is a license tax on the transient rental occupation. The tax, when due, constitutes a debt owed by the operator to the city . . . .

**¶8**          Like the MCTC, the TCC defines "person" to include "broker." TCC § 19-1. Other Cities also taxed the OTCs under their versions of MCTC § 447, which Tucson never adopted. *See City of Phoenix*, 247 Ariz. at 236 ¶ 1 n.2; TCC § 19-447 ("Reserved.").

## II.      Prior Litigation

**¶9**        The OTCs, including Expedia, challenged the assessment. The parties litigated the case through the municipal tax hearing officer ("hearing officer"), superior court, the court of appeals, and the Arizona Supreme Court. *See City of Phoenix*, 247 Ariz. at 237–38 ¶¶ 6–9. Throughout the litigation, the parties and the reviewing bodies referred to the MCTC provisions, not to the Cities' individual tax codes. *Id.* at 236 ¶ 1 n.2; *see also City of Phoenix v. Orbitz Worldwide Inc.*, 1 CA-TX 16-0016, 1 CA-TX 16-0018, 2018 WL 4265950 (Ariz. App. Sept. 6, 2018) (mem. decision). Ultimately, the supreme court held the OTCs liable for taxes under MCTC § 444, but not § 447. *City of Phoenix*, 247 Ariz. at 236–37 ¶ 1.

**¶10**        In its de novo review of the MCTC provisions, the supreme court analyzed § 444's language, focusing on the phrases "every person" and "engag[ed] . . . in the business of operating a hotel." *See id.* at 239–41 ¶¶ 14–22. These phrases define the category of taxpayer and the type of taxable activity. The supreme court reasoned that the use of the terms "every person" and "business" broadened the taxpayer category "beyond the hotels' owners and operators,"—"those who physically own or furnish lodging to customers"—to "the *entire* business activity and on *every* 'person' engaged in that activity." *Id.* at 239 ¶¶ 15–16. Because the OTCs "advertise available rooms, solicit potential customers, collect customers' information, process payments, confirm reservations, provide customer service, and facilitate reservation modifications and cancellations," they are brokers "actively engaged in 'the business of operating a hotel.'" *Id.* at 236 ¶ 1, 240 ¶ 19. The supreme court held "§ 444 imposes a tax liability on *any* 'person'— not just a hotel owner or operator—that engages for profit in business activities that are central to keeping brick-and-mortar lodging places functional or in operation." *Id.* at 240 ¶ 18.

**¶11**        By contrast, the court held MCTC § 447 did not apply to brokers because it only taxed "the gross income from the business activity of any hotel," and thus, did not expand beyond "brick-and-mortar lodging places." *Id.* at 243 ¶ 32.

**¶12**        In sum, the supreme court held the OTCs are brokers, but are not hotel operators or hotels, and therefore are liable to the Cities under MCTC § 444, but not § 447. *See id.* at 239 ¶¶ 15–16, 242 ¶ 29, 243 ¶ 31–33. Because factual issues existed regarding the retroactive application of MCTC § 444, the supreme court remanded the case to the superior court "to determine whether [MCTC] § 542(b) bars the Cities from assessing taxes,

penalties, and interest due under § 444 before the [2013 Assessments]." *Id.* at 237 ¶ 1.

**¶13**     Before remand, only the hearing officer had commented on the specific language of TCC § 19-66 and did so in a footnote to his discussion of MCTC § 447. At that time, the hearing officer decided MCTC § 447 did not apply to the OTCs because it applied only to hotels. The footnote stated, "Some of the Cities however have enacted supplemental transient lodging taxes in provisions other than the MCTC § 447," and cited three cities' provisions, including TCC § 19-66. Two of those cities' provisions tax "hotels" explicitly, while TCC's § 19-66 taxes "[e]very person who operates or causes to be operated a hotel." The hearing officer concluded, "[b]ased on the language of [all three] provisions, the reasoning regarding MCTC § -447 is also applicable to those provisions."

### III.     Superior Court Decision on Remand

**¶14**     On remand, Expedia moved for summary judgment, arguing Tucson should be judicially estopped from "claiming . . . § 19-66 is a 'combined' tax for MCTC §§ 444 and 447." Tucson also moved for summary judgment, contending it "always considered all brokers, including the OTCs, to be taxable under MCTC § 444." Tucson's motion did not discuss or mention TCC § 19-66 but cited the supreme court's footnote stating, "each City has passed its own tax ordinance which is 'based on and do[es] not differ substantively from the MCTC.'" *See City of Phoenix*, 247 Ariz. at 236 ¶ 1 n.2. Both parties also moved for summary judgment on the retroactivity issue, Expedia arguing against and Tucson for.

**¶15**     The superior court denied Expedia's motion for summary judgment regarding the application of TCC § 19-66, finding the provision "is a version of MCTC § 444" because it contains "operative language, and underlying definitions, substantively indistinguishable from that of MCTC § 444." The court concluded § 19-66 and MCTC § 444 differed substantively only in their tax bases—"transients" and "all 'persons'" respectively.

**¶16**     The court also partially granted each party's motion for summary judgment as to retroactivity, finding TCC § 19-66 applicable retroactively to August 2007 but not before. Lastly, the court awarded penalties under TCC § 19-540 but not under § 19-80, which had been enacted during pendency of the litigation.

**¶17**     This court has jurisdiction over Expedia's timely appeal and Tucson's timely cross-appeal under Arizona Revised Statutes ("A.R.S.") §§ 12-2101(A)(1) and -170(C).

**DISCUSSION**

¶18      On appeal, Expedia argues the superior court erred by (1) finding Expedia liable to Tucson for any tax, (2) finding Tucson could retroactively assess taxes against Expedia, and (3) holding Expedia liable for any penalties. On cross-appeal, Tucson argues the superior court erred by finding Expedia not liable for additional retroactive taxes or penalties under TCC § 19-80. Because we hold TCC § 19-66 does not apply to Expedia, we do not address retroactivity or penalties. *See Freeport McMoRan Corp. v. Langley Eden Farms, LLC*, 228 Ariz. 474, 478 ¶ 15 (App. 2011) ("[W]e do not issue advisory opinions or decide unnecessary issues.").

**I.    The Superior Court Did Not Exceed the Scope of the Supreme Court's Mandate.**

¶19      Expedia first argues the superior court exceeded the scope of the supreme court's mandate by determining liability under TCC § 19-66. Specifically, Expedia argues *City of Phoenix* confined the superior court to determining tax liability under the Cities' equivalents of MCTC § 444 and, because Tucson taxed Expedia under TCC § 19-444 at a zero-percent tax rate, the litigation should have ended with the supreme court's opinion. Tucson responds that TCC § 19-66 "is clearly within the Arizona Supreme Court's Order."

¶20      "We review de novo whether the trial court followed the appellate court's mandate." *Bogard v. Cannon & Wendt Elec. Co., Inc.*, 221 Ariz. 325, 334 ¶ 30 (App. 2009). On remand, the trial court cannot consider issues decided by the appellate court but may address any issues not resolved by the mandate. *Cyprus Bagdad Copper Corp. v. Ariz. Dep't of Revenue*, 196 Ariz. 5, 7 ¶ 7 (App. 1999) (citation omitted).

¶21      Tucson's § 19-66 has been involved in the litigation from the beginning as part of the 2013 Assessment. And because § 19-444's zero-percent tax rate cannot result in any tax liability, § 19-66 is the only provision under which Expedia potentially owes taxes to Tucson. However, no party directly challenged § 19-66's specific language during the prior litigation. The supreme court construed MCTC §§ 444 and 447, noting that the Cities' local tax provisions were equivalent. *City of Phoenix*, 247 Ariz. at 236 ¶ 1 n.2. But this analysis did not determine whether § 19-66 was equivalent to MCTC § 444 or MCTC § 447 or, as Tucson contends, both. Indeed, the supreme court did not discuss § 19-66 at all. Thus, because *City of Phoenix* does not explicitly or implicitly analyze § 19-66's language, its application remains an unresolved issue. As such, the mandate did not

preclude the superior court from determining whether § 19-66 applied to Expedia on remand. *See Cyprus Bagdad Copper Corp.*, 196 Ariz. at 7 ¶ 7 (stating trial courts on remand "may address any issues that the appellate court did not dispose of either expressly or impliedly") (cleaned up).

## II. Waiver of Arguments Regarding TCC § 19-66.

¶22 Both parties argue the other waived its arguments regarding the applicability of TCC § 19-66 by not raising their arguments in the prior litigation.

¶23 Parties generally waive arguments raised for the first time on appeal, *see Englert v. Carondelet Health Network*, 199 Ariz. 21, 26 ¶ 13 (App. 2000), or those unsupported by law, *Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022). *See also* Ariz. R. Civ. App. P. 13(a)(7)(A). But waiver is a discretionary procedural rule, not a jurisdictional matter. *Sobol v. Marsh*, 212 Ariz. 301, 303 ¶ 8 (App. 2006).

¶24 Given the unique facts of this case, its history, and the substantial interests of the parties, we decline to find waiver and instead reach the merits. Because *City of Phoenix* did not construe TCC § 19-66, the matter of its applicability to Expedia remains outstanding, and we address it here.

## III. Expedia is Not Liable for Taxes to Tucson Under TCC § 19-66.

¶25 We construe city ordinances "by the same rules and principles which govern the construction of statutes, and we review issues of statutory interpretation de novo[.]" *City of Phoenix*, 247 Ariz. at 238 ¶ 10 (citation omitted). We begin by reading the statute's words "neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory context." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023). "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). Where possible, we give meaning "to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).

¶26 And we "avoid construing a statute in a manner that leads to an absurd result." *France v. Indus. Comm'n of Ariz.*, 250 Ariz. 487, 490 ¶ 13 (2021); *see also City of Peoria v. Brink's Home Sec., Inc.*, 226 Ariz. 332, 333 ¶ 6 (2011) (explaining courts shall not impose tax liability through "strained

7

construction or implication") (citation omitted). Lastly, where such exist, courts must interpret ambiguities in tax statutes "in favor of the taxpayer." *State ex rel. Ariz. Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Ord. of Moose, Inc.*, 187 Ariz. 242, 247 (App. 1996).

**¶27**　　　　Expedia argues § 19-66 does not apply to OTCs because it is Tucson's equivalent of MCTC § 447 or, alternatively, because § 19-66 applies only to hotel operators. Tucson responds that because § 19-66 applies to "[e]very person," it is like MCTC § 444 and must apply to OTCs.

### A.　The Supreme Court's Construction of MCTC §§ 444 and 447 Does Not Apply to TCC § 19-66.

**¶28**　　　　MCTC § 19-66 applies to "[e]very person who operates or causes to be operated a hotel . . . ." The text therefore deviates from the restrictive formulation of MCTC § 447, which only imposes a tax on "*any hotel.*" (Emphasis added). But it also departs from the broader language of MCTC § 444 which taxes "the gross income from *the business activity* [of] every person engaging in or continuing in *the business of* operating a hotel." (Emphasis added). The omission of any reference to "business activity" and "business of" operating hotels is significant. *See City of Phoenix*, 247 Ariz. at 239 ¶ 15 (explaining the inclusion of "business of" expands the category of taxable activity beyond hotel owners and operators). Further, per its express language, § 19-66 differs from MCTC § 447 because it is not a transaction privilege tax levied upon "business activities of any hotel" but rather a licensing tax levied upon "the rent charged by the operator to a transient," TCC § 19-66(a). Thus, § 19-66 is substantially distinct, and the supreme court's constructions of MCTC § 444 and § 447 do not precisely address its language.

### B.　Section 19-66 Applies to Hotel Operation.

**¶29**　　　　Our interpretation begins with the plain language of § 19-66. *See Stambaugh*, 242 Ariz. at 509 ¶ 7. The first sentence of § 19-66(a) defines the applicable taxpayer and taxable activity—"[e]very person who operates or causes to be operated a hotel." The phrase "operates or causes to be operated a hotel" qualifies, and therefore limits, the category of "every person." As written, § 19-66 refers to only two taxpayer categories: "every person" who operates hotels, and "every person" who "cause[s] [hotels] to be operated." The absence of "business activity" and "business of" from §

19-66(a) eliminates all others as subjects of the tax.[1] Thus, § 19-66 will apply only if OTCs like Expedia are hotel operators or if they cause hotels to be operated.

### 1. OTCs Are Not "Hotel Operators."

**¶30** Tucson's code, unlike the MCTC, defines "hotel operator" as

> the person who is proprietor of the hotel, whether in the capacity of owner, lessee, sublessee, mortgagee in possession, licensee or any other capacity. Where the operator performs his functions through a managing agency of any type or character other than an employee, the managing agent shall also be deemed an operator for the purposes of this section and shall have the same duties and liabilities as his principal.

TCC § 19-1. Thus, a "hotel operator" is either the proprietor of the hotel or a non-employee managing agent who performs the proprietor's functions.

**¶31** OTCs are brokers, not proprietors of hotels. *See City of Phoenix*, 247 Ariz. at 242–43 ¶¶ 29–31. Per the TCC's definition, a broker is "any person engaged or continuing in business who acts for another for a consideration in the conduct of a business activity taxable under this article, and who receives for his principal all or part of the gross income from the taxable activity." TCC § 19-1. As our supreme court observes, OTCs "actively engage[] in '*the business of* operating a hotel,'" since they provide services that "are central to keeping a hotel functional and in operation." *See City of Phoenix*, 247 Ariz. at 240 ¶ 19 (emphasis added). By contrast, a proprietor—as defined at the time Tucson adopted § 19-66 in 1990—is "one who has the legal right or exclusive title to something: owner" or "one having an interest (as control or present use) less than absolute and exclusive right." *Proprietor*, Webster's Ninth New Collegiate Dictionary (9th

---

[1]    Given § 19-66's narrower phrasing, we note it appears more analogous to the specific statutes discussed in *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 313 (4th Cir. 2009) (discussing a statute applying to "[o]perators of hotels, motels, tourist homes, tourist camps, and similar type businesses") and *Montana Dep't of Revenue v. Priceline.com, Inc.*, 354 P.3d 631, 634 ¶ 8 (Mont. 2015) (discussing a statute requiring "[t]he owner or operator of a facility [to] collect the tax . . . .") than it does to MCTC § 444. *See City of Phoenix*, 247 Ariz. at 239 ¶ 15 (distinguishing *Pitt Cnty.* and *Mont. Dep't of Revenue* based on their specific, narrower, statutory language).

ed. 1984). Because brokers do not own, control, or have present use of hotels, they are not proprietors.

¶32　　　However, the TCC's definition of "hotel operator" also includes managing agents. TCC § 19-1. Under Tucson's code, a managing agent is deemed a "hotel operator" if the agent is not an employee of the operator and the operator "performs his functions through" the agent. *Id.* OTCs are not employees of hotels. *See City of Phoenix*, 247 Ariz. at 237 ¶¶ 2–3. Further, OTCs do perform some of the functions of proprietors because they "advertise available rooms, solicit potential customers, collect customers' information, process payments, confirm reservations, provide customer service, and facilitate reservation modifications and cancellations." *Id.* at 240 ¶ 19. But our analysis does not end there. The code's language does not specify that a managing agent who performs some of a hotel's functions, like OTCs, must be deemed an operator under § 19-1. Instead, the provision states a managing agent is deemed an operator if "the operator performs *his functions* through a managing agency." TCC § 19-1 (emphasis added). This wording is ambiguous—it could rationally refer to *all* of the operator's functions, or merely *some* of them. *See Premiere RV & Mini Storage LLC v. Maricopa Cnty.*, 222 Ariz. 440, 444 ¶ 14 (App. 2009) ("A statute is ambiguous if there is uncertainty about the meaning or interpretation of its terms, or if the statute's text allows for more than one rational interpretation.") (cleaned up, citation omitted).

¶33　　　OTCs do not perform all the functions of an operator, *City of Phoenix*, 247 Ariz. at 239 ¶ 15, and therefore might qualify as a "hotel operator" as a managing agent, but only if we read § 19-1 to include those who perform only a subset of the proprietor's functions. But because we must construe ambiguous tax statutes in favor of the taxpayer, *Phoenix Lodge No. 708*, 187 Ariz. at 247, we read this provision as requiring performance of *all* functions of an operator to qualify as a managing agent, and therefore, be deemed a "hotel operator" for purposes of the TCC. Thus, OTCs—which perform only some of the functions of proprietors—are not managing agents under § 19-1 and cannot be deemed "hotel operators."

### 2.　　OTCs Do Not Cause Hotels to Be Operated.

¶34　　　Tucson argues § 19-66's provision regarding "causes to be operated a hotel" is equivalent to MCTC § 444's provision regarding "the business of operating" a hotel. Even if we were to agree with Tucson's suggestion, we cannot look only at the first sentence of § 19-66. Rather, we must "interpret statutory language in view of the entire text, considering

the context and related statutes on the same subject." *Nicaise*, 245 Ariz. at 568 ¶ 11.

¶35 As discussed above, we view the absence of "business of" and "business activity" from § 19-66 as meaningful. *See supra* ¶ 28. As written, § 19-66 does not apply to "business activity" adjacent to hotel operation as provided in § 444, narrowing the field of taxable activities. *See City of Phoenix*, 247 Ariz. at 239–40 ¶¶ 14–18. The remaining language further emphasizes § 19-66's application exclusively to hotel operation itself. For instance, Tucson's tax is based on the "rent charged *by the operator*" and creates a "debt *owed by the operator*." TCC § 19-66(a) (emphasis added). We must construe § 19-66 as a whole, including these phrases, *see Stambaugh*, 242 Ariz. at 509 ¶ 7, and give meaning to their use, *see Nicaise*, 245 Ariz. at 568 ¶ 11. Such phrasing shows the tax is directed at hotel operations, not adjacent business activities, and the language expressly makes operators liable for paying taxes on room rental revenue.

¶36 Moreover, unlike MCTC § 444, TCC § 19-66 "is not [a tax] on the privilege of doing business within the city[] but is a license tax on the transient rental occupation." TCC § 19-66(a); *City of Phoenix*, 247 Ariz. at 238–39 ¶¶ 13–14. Put another way, the taxable activity of § 19-66 is issuing licenses to transients for occupying real property. That § 19-66 is not a transaction privilege tax—but rather a real property licensing tax—is significant because while OTCs do engage in business transactions, they do not themselves issue licenses to transients. Instead, they broker deals between the licensors (operators) and licensees (transients). Thus, the entire taxing structure specified in § 19-66 is not aimed at the OTCs' activities.

¶37 Further, as § 19-66 states, the tax, "when due, constitutes a debt owed *by the operator* to" Tucson. TCC § 19-66(a) (emphasis added). If Tucson's construction of § 19-66 is accepted, taxable activity of OTCs would be a debt owed by the hotel operators, not the OTCs. Put differently, applying § 19-66 against Expedia would create tax liability against an entity that does not owe the debt imposed. We avoid such absurd constructions. *See France*, 250 Ariz. at 490 ¶ 13; *see also In re Transient Occupancy Tax Cases*, 384 P.3d 1236, 1240 (Cal. 2016) (explaining a tax creating a debt owed only by the operator "does not appear to contemplate that the city treasurer may assess an intermediary such as an OTC for unpaid transient occupancy tax").

¶38 To summarize, TCC § 19-66 applies to hotel operations via proprietors (persons who own hotels), managing agents (persons who perform *all* the functions of a principal proprietor), and those who cause a

hotel to be operated (persons who directly engage in hotel operation). Expedia is not liable to Tucson under § 19-66 because it performs none of those taxable activities.

**¶39**     Because we hold Expedia is not liable to Tucson for taxes under § 19-66, we vacate the superior court's award to Tucson of taxes, interest, and penalties.

## CONCLUSION

**¶40**     We hold Expedia is not liable to Tucson for taxes under TCC § 19-66 and therefore vacate the court's judgment and remand with instructions to enter judgment in favor of Expedia, consistent with this decision.

**¶41**     Expedia requests an award of attorneys' fees, costs, and expenses under Arizona Rule of Civil Appellate Procedure 21 and A.R.S. § 12-348. In light of the result, Tucson is no longer the prevailing party, and in our discretion, we decline to award attorneys' fees on appeal. But the superior court may reconsider any requests for fees on remand, including those incurred by Expedia in this appeal. *See Centerpoint Mech. Lien Claims, LLC v. Commonwealth Land Title Ins. Co.*, 255 Ariz. 261, 277 ¶ 78 (App. 2023).



AMY M. WOOD • Clerk of the Court
FILED:     TM

12